**Louis T. GREENBLATT,**

**v.**

**The BUDD COMPANY and Terry N. Patterson and Lewis M. Miller Appointed by The Budd Company to Administer Certain Employee Pension Plans.**

**Civ. A. No. 83–4333.**

United States District Court,
E.D. Pennsylvania.

Aug. 5, 1987.

---

together filed the present motion for summary judgment on the action commenced in this Court by the plaintiff, Louis T. Greenblatt, who seeks employee pension benefits or other appropriate extracontractual relief due him under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), Pub.L. 93–406, 88 Stat. 832 (codified as amended in scattered sections of Title 26 and 29 of the United States Code), and under Pennsylvania tort law.

The plaintiff's employment relevant to this litigation began in March, 1956. At that time, he started working for the Gindy Manufacturing Corporation (hereinafter "Gindy"). In May of 1956, Gindy, a manufacturer of truck trailers located in the Philadelphia area, promoted plaintiff to the position of executive vice-president within its organization.

In 1968, the defendant, The Budd Company (or "Budd"), a privately owned multinational corporation, acquired Gindy. At this time and until 1975, Gindy was operated as a wholly owned subsidiary of The Budd Company. The acquisition of Gindy by The Budd Company, however, had no immediate effect on the plaintiff. In fact, the plaintiff remained in his position at Gindy as an executive vice-president until 1970.

In 1970, the plaintiff, due to his wife's serious illness, reported to Gene Hinden, Gindy's president at that time, that he "could not devote substantially all of his time to the Gindy Company any more...." At this time, Mr. Hinden granted plaintiff's request to have his title changed to "Assistant to the President," and to assume, presumably, a less time-consuming yet responsible position with the company, pending the outcome of his wife's illness.

In 1976, some time after the Federal Trade Commission approved The Budd Company's acquisition of Gindy, Budd renamed the Gindy Manufacturing Corporation as the Budd Company Trailer Division (hereinafter "Trailer Division"). As will be described in more detail below, the plaintiff's working relationship with his immediate supervisors at the Trailer Division deteriorated some time after December 27, 1977. In early 1978, the plaintiff was de-

Jon J. Belisonzi, Philadelphia, Pa., for plaintiff.

Carter R. Buller, Robert M. Goldich, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

The defendants, The Budd Company, Terry N. Patterson and Lewis M. Miller, have

moted without notice to the position of Sales Representative of National Accounts. In June of 1981, the plaintiff, due to harassment from his superiors at the Trailer Division, was forced to resign.

From the 1968 Budd acquisition of Gindy until the time of his retirement, the plaintiff has been a beneficiary under the various pension plans maintained by his employer. Following the 1968 acquisition, Gindy, as a subsidiary of The Budd Company, maintained for its salaried management employees, including the plaintiff, a pension plan (hereinafter the "Gindy Pension Plan") that was separate and distinct from the pension plan that The Budd Company maintained for its salaried management employees. The pension plan maintained by The Budd Company for its salaried management employees is called The Budd Company Pension Plan for Executive and Administrative Employees (hereinafter the "Corporate Pension Plan").

In 1976, when the Budd Company renamed the Gindy Manufacturing Corporation as The Budd Company Trailer Division, the Gindy Pension Plan was fully restated and renamed the Trailer Division Pension Plan for Salaried Employees (hereinafter the "Trailer Division Pension Plan"). The Trailer Division Pension Plan was also separate and distinct from the Corporate Pension Plan.

Significantly, the pension benefits available to salaried management personnel under the Corporate Pension Plan were at all times material to this litigation (1968–1981) superior to those benefits available to management personnel under the Gindy Pension Plan and to those available to management personnel under the Trailer Division Pension Plan.

Concerning this disparity in available pension benefits under the two plans, the plaintiff alleges that Budd's chairman of the board, Phil Scott, represented to him shortly after the acquisition, "that now that [top management personnel at Gindy] were part of the Budd family they would be receiving better pension benefits then [sic] they enjoyed at Gindy."

The plaintiff further alleges that Jim Howarth, the Trailer Division's General Manager, and Bill Graham, the Trailer Division's Manager of Employee Relations, on numerous occasions, represented to plaintiff that the benefits available under the Trailer Division Pension Plan would be made equal to the benefits available under Budd's Corporate Pension Plan.

Further, the plaintiff relates that during the period of his employment, The Budd Company transferred management personnel from other Budd Divisions into various upper and middle management positions— no more important than his own—at the Trailer Division. Yet, these transferees— Jim Howarth, Bill Graham, Bart Brizee, Jack McBrearty, and Ed McDermott—were permitted, plaintiff avers, by the Budd Company to remain on its corporate payroll. By virtue of remaining on The Budd Company's corporate payroll, these transferees retained their Budd corporate benefits, including the superior benefits derived from continued participation in the Corporate Pension Plan.

In this regard, plaintiff approached the Trailer Division's general manager, Jim Howarth, and demanded his entitlement to the superior pension benefits available to salaried management personnel under Budd's Corporate Pension Plan. In response, Howarth requested that J.A. Brooks, The Budd Company's Employee Manager, and R.H. Vansteenkiste, Budd's Group Vice President of Industrial Products, place plaintiff along with three other employees on the monthly payroll. Up to this time, plaintiff had been paid bi-weekly from the Trailer Division's payroll.

In response to Howarth's request, plaintiff in the latter part of March, 1976, received a letter from Henry Charlton and Bill Graham that stated:

"Dear Lou: We are pleased to indicate that effective April 1, 1976 you will be transferred to the Budd monthly payroll."

Subsequent to this time, plaintiff was paid from Budd's monthly management payroll. This payroll is the one, plaintiff claims, from which the aforementioned transferees

were paid and allowed as a consequence thereof to retain their entitlement to benefits under the Corporate Pension Plan.

Finally, in late December of 1977, plaintiff's relationship with The Budd Company deteriorated. Plaintiff, in an affidavit submitted to this Court, avers that on or about December 27, 1977, he failed to sign to the dismay of Messrs Howarth and Charlton, an employee confidentiality disclosure statement. In early 1978, plaintiff, without notice, was demoted to the position of Sales Representative of National Accounts.

At this time, Henry L. Charlton, Greenblatt's superior, began at the Trailer Division to harass the plaintiff on a daily basis. At one point Charlton, it is alleged, stated to plaintiff, "I hate you goddamn Jews." On another occasion, Charlton viciously related to Mr. Greenblatt, "Lou, when Tyssen buys The Budd Company they are going to build a special microwave oven to put you in." In January 1981, because Charlton's harassment became unbearable, plaintiff was forced to resign.

At this time, plaintiff received a letter from defendant, Lewis M. Miller, the Trailer Division's Personnel Manager, informing plaintiff of his entitlement to benefits under the Trailer Division Pension Plan. As plaintiff, in his affidavit submitted in opposition to defendants' motion for summary judgment, explains:

> [i]n response to this letter, I spoke with Mr. Miller complaining to him that I was entitled to the Budd Corporate Pension Plan as a result of the promises made to me in the past and the conduct taken. Mr. Miller informed me in effect, 'This is your pension, if you want to fight we will hold your pension benefits up until the entire matter is resolved.'

Affidavit of Louis T. Greenblatt at 5. Because plaintiff "was desperate for ... funds to live upon," he accepted the pension benefits made available to him under the Trailer Division Pension Plan. Thereafter, plaintiff instituted the present litigation.

The plaintiff alleges in his complaint that:

(1) the defendants discriminated against him during and ultimately discharged him from his employment at The Budd Company for the purpose of interfering with his attaining pension benefits allegedly due him under the Corporate Pension Plan in contravention of § 510 of ERISA, 29 U.S.C. § 1140 (Count One);

(2) the defendants in violation of Pennsylvania tort law misrepresented to plaintiff that the pension benefits he was receiving under the Trailer Division Pension Plan would be made equal to those available to comparable salaried management personnel under the Corporate Pension Plan;

(3) the defendants, by virtue of their error in calculation are not paying to plaintiff the amount of pension benefits to which he is entitled under the Trailer Division Pension Plan for Salaried Employees in contravention of § 502 of ERISA, 29 U.S.C. § 1132 (Count III); and

(4) the defendants have wrongfully withheld from plaintiff the pension benefits to which he is entitled under The Budd Company Pension Plan for Executive and Administrative Employees, also in contravention of § 502 of ERISA, 29 U.S.C. § 1132 (Count IV).

## I. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, the defendants seek judgment on the allegations contained at Count I of the plaintiff's complaint on the basis that these allegations fail to state a claim upon which relief could be granted. As to Count II, defendants move for summary judgment on the basis that plaintiff's state law action for misrepresentation is preempted by ERISA, see 29 U.S.C. § 1144, and that these allegations fail to state a claim upon which relief could be granted under ERISA. Finally, defendants move for summary judgment on all counts on the basis that plaintiff has failed to exhaust his internal plan remedies, which defendants claim is a precondition to bringing suit in federal district court.

This Court finds that plaintiff's allegations at Count I state a claim upon which

relief can be granted under § 510 of ERISA, 29 U.S.C. § 1140. Further, this Court determines that plaintiff's action for misrepresentation alleged at Count II is not preempted by the ERISA statute, and can be maintained under the Pennsylvania tort law. Finally, this Court holds that plaintiff need not exhaust his internal plan remedies to bring directly in this Court the claims he makes at Counts I and II of his complaint. However, as to Counts III and IV, which are contractual claims, the plaintiff must exhaust his internal plan remedies before he can proceed with these claims in this Court.

Thus, this Court will deny defendants' motion for summary judgment and will order the plaintiff to pursue and exhaust his internal plan remedies as to his claims at Counts III and IV of his complaint within forty-five (45) days after the date this Court's Order is entered. This Court will further order that The Budd Company, upon receiving the plaintiff's claims, shall process and judge these claims within a thirty (30) day period. Until this has been effected, this matter will be stayed. The Court will now examine the merits of the claims presented.

## II. INTERFERENCE WITH ATTAINING PENSION BENEFITS

Plaintiff asserts at Count I that the defendants both discriminated against and discharged plaintiff from his employment at The Budd Company for the purpose of interfering with his attaining pension benefits allegedly due him under the Corporate Pension Plan in contravention of § 510 of ERISA, 29 U.S.C. § 1140. The defendants seek judgment on the basis that the allegations at Count I fail to state a claim upon which relief could be granted. This Court disagrees.

 Plaintiff's allegations at Count I are sufficient to state a claim under Section 510 of ERISA, 29 U.S.C. § 1140.[1] Section 510 provides that:

"it shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan."

29 U.S.C. § 1140.

The plaintiff has submitted facts to oppose the defendants' motion for summary judgment from which a reasonable person could find by a preponderance of the evidence that plaintiff is entitled to the pension benefits provided under The Budd Company's Corporate Pension Plan. Moreover, plaintiff has set forth facts demonstrating that persons at The Budd Company purposefully interfered with his attaining the pension benefits due him under defendant's Corporate Pension Plan.

As an initial matter, the inference can be drawn that Lewis M. Miller, the Trailer Division's personnel manager, knowing of Mr. Greenblatt's great need for income, both discriminated against and intimidated the plaintiff into accepting the Trailer Division Plan's inferior pension benefits. Specifically, when Mr. Greenblatt sought his pension benefits shortly after retiring, defendant Miller offered him the inferior benefits, stating, "This is your pension, if you want to fight we will hold your pension benefits up until the entire matter is resolved."

Miller's actions, according to the plaintiff, had the effect of coercing Mr. Greenblatt into accepting the inferior pension benefits and caused him to forego the pursuit of the more favorable benefits due him under the Corporate Pension Plan. As the plaintiff put it best, he "was desperate for funds to live upon," and had no choice but to accept the benefits made available to him under the Trailer Division Pension Plan.

Furthermore, the facts put forward in Mr. Greenblatt's affidavit reflect that Hen-

---

1. Section 510 speaks to discharging, firing, suspending, expelling, disciplining or discriminating against a participant. In the case at bar, the actions taken by the defendants do not lend themselves to any particular categorization or characterization. However, the language of Section 510 is broad enough to encompass and to prohibit the defendants conduct in this case.

ry L. Charlton's systematic and intentional harassment of him occurred only a short time before defendant Miller's ultimatum. From this affidavit, one could plausibly draw the inference that Charlton's actions were taken in concert with those taken by Mr. Miller. Therefore, each defendant and The Budd Company is potentially liable, either jointly or severally, to the plaintiff as a result of their actions. Accordingly, this Court finds that the plaintiff has stated a cause of action under Count I.

## III. PREEMPTION

Plaintiff asserts at Count II of his complaint that The Budd Company, his employer, misrepresented to him in violation of Pennsylvania law that the pension benefits he was receiving under the Trailer Division Pension Plan would be made equal to those available to comparable salaried management personnel under the Corporate Pension Plan. Moreover, plaintiff avers that he relied on this misrepresentation to his detriment.

This Court must first ascertain whether the plaintiff can maintain this action under state law, or whether this common law action for misrepresentation is preempted by ERISA. *See* 29 U.S.C. § 1144. Section 1144 of Title 29, United States Code, provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* at § 1144(a). The focal point in applying this provision is to ascertain the meaning of the words "relate to" that appear in this section. This is so because preemption only occurs if the state law "relates to" an employee benefit pension plan within the meaning of the statute.

Recently, the Supreme Court further delineated the scope of federal preemption under ERISA in *Pilot Life Insurance Co. v. Dedeaux,* —— U.S. —— 107 S.Ct. 1549,

95 L.Ed.2d 39 (1987). *See also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court in *Pilot Life* reaffirmed that Congress made the preemption provision "deliberately expansive" and "designed to 'establish pension plan regulation exclusively as a federal concern.' " *Id.* —— U.S. at ——, 107 S.Ct. at 1552 (*quoting Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)).

State laws that make reference to, or otherwise attempt to or succeed in regulating or administrating employee pension benefit plans "relate to" ERISA and are accordingly preempted. *Fort Halifax Packing Co., Inc. v. Coyne,* —— U.S. ——, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). *See also McMahon, et al. v. McDowell, et al.,* —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986); *Trogner v. New York Life Insurance Co.,* 633 F. Supp. 503 (D.Md.1986).

The state laws at issue in *Fort Halifax* and the other cases cited above intrude upon the federal domain that is regulated exclusively by ERISA. However, a series of cases exist where the decision to preempt state law is not easily made. In these cases, the state laws in question, while not designed to affect pension plans, relate to them in an indirect fashion. Courts in these cases have scrutinized closely the state laws in question before allowing, if at all, the axe of federal preemption to fall.[2]

In those cases where federal courts have decided that preemption is not mandated, the rationale often advanced is that the state law in question impacts upon ERISA in an indirect manner that is too tenuous or too remote to warrant preemption. The case at bar presents this type of situation. However, the state law in ques-

---

**2.** See *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985) (State law claim of breach of implied covenant of good faith and fair dealing is preempted); *Authier v. Ginsberg,* 757 F.2d 796 (6th Cir.1985) (ERISA preempts state-law claim for wrongful discharge where public policy violated by discharge was established by ERISA); *Sommers Drug Stores v. Corrigan Enterprises,*

*Inc.* 793 F.2d 1456 (5th Cir.1986) (ERISA did not preempt state common law of corporate fiduciary duty as applied to this case); *Lane v. Goren,* 743 F.2d 1337 (9th Cir.1984) (ERISA did not preempt a pension plan employee's state law claim that the plan had fired him for reasons of race and age).

tion in the case before the Court does not impact upon an employee pension benefit plan or affect the Congressional scheme contained in the Employee Retirement Income Security Act at all.

The cause of action for misrepresentation alleged by the plaintiff at Count II of his complaint should not be preempted because, simply put, the premise underlying this action was that plaintiff was deceived by the verbal statements made and the actions taken by his employer. That the subject of the deception concerned pension benefits is only incidental and not essential to the plaintiff's cause of action. Like promises for a raise in salary, a promotion, or the use of tickets to a baseball game, plaintiff's employer's promise to provide the plaintiff with certain benefits at some unknown time in the future, upon which plaintiff could reasonably rely, is the essence of the fraud alleged.

That this action alleged at Count II of plaintiff's complaint does not "relate to" an employee benefit plan is supported also by the fact that the representations at issue were made by plaintiff's superiors, as his employers, and not as plan fiduciaries. Similarly, the misrepresentations at issue were made to plaintiff in the ordinary course of business and not in the course of administering a Budd Company pension plan.

Moreover, if the plaintiff succeeds in proving these allegations, the compensatory damages would be paid directly to him by The Budd Company. There is no principled basis for the conclusion that compensatory damages should be paid out of any Budd Company employee pension benefit plan.[3]

Finally, the case law suggests and this Court is persuaded that the plaintiff would be without a remedy under ERISA. *See Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Pokratz v. Jones Dairy Farm,* 771 F.2d 206 (7th Cir.1985). As such, it would defy logic to presume that Congress intended to preempt the common law action of fraud in a situation of this type. *See Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388 (E.D.Calif. 1981) (Protection against fraud is a classically important state function which the Court does not find expressly or impliedly preempted by ERISA). Accordingly, the plaintiff states a valid cause of action under Pennsylvania law for fraud.

## IV. EXHAUSTION OF INTERNAL PLAN REMEDIES

Finally, defendant moves for summary judgment as to all Counts contained in plaintiff's complaint on the basis that plaintiff failed to exhaust his internal plan remedies. There is no dispute that the plaintiff has not at this time pursued and exhausted the internal plan remedies that are available to him. Defendants claim that exhaustion is a precondition to bringing suit under ERISA in a federal district court. Thus, this Court must decide whether this failure to exhaust is fatal. For the reasons set forth below, this Court concludes that it is not.

The United States Supreme Court has not addressed the exhaustion of remedies issue that has been raised by the defendants in this Court. *See Mason v. Continental Group, Inc.,* 474 U.S. 1087, 106

---

**3.** This Court notes that federal courts have consistently preempted state law tort actions that arise from the presentation of a valid contractual claim to a pension plan administrator who acts tortiously in processing or evaluating such a claim. *See Foltz v. U.S. News and World Report, Inc.,* 627 F.Supp. 1143 (D.D.C. 1986); *Powell v. Chesapeake and Potomac Telephone Co. of Va.,* 780 F.2d 419 (4th Cir.1985); *Light v. Blue Cross and Blue Shield of Ala, Inc.,* 616 F.Supp. 558 (D.C.Miss.1985). As is pointed out later in the text, some of these courts not only hold these claims preempted, but have also rejected the argument that compensation for this tortious behavior is available under ERISA.

Specifically, these courts have rejected the argument that such extra-contractual relief is available under § 502(a)(3)(B) as "other appropriate equitable relief." However, in this case, Mr. Greenblatt's action for misrepresentation, unlike the plaintiffs' actions in the above cases, does not charge the defendant with committing fraud or tortious behavior in connection with the processing of a valid contractual claim. To the contrary, plaintiff's action for misrepresentation seeks relief from The Budd Company regardless of his actual or alleged contractual entitlement to benefits under any Budd Company pension plan.

S.Ct. 863, 88 L.Ed.2d 902 (1986) *denying cert. to,* 763 F.2d 1219 (11th Cir.1985). *See id.* at 864 (White, J., dissenting from Court's denial of certiorari to the United States Court of Appeals for the Eleventh Circuit). However, this issue has been definitively resolved by the United States Court of Appeals for the Third Circuit. *See Zipf v. American Telephone and Telegraph Co.,* 799 F.2d 889 (3d Cir.1986); *Del Grosso v. Spang & Co.,* 769 F.2d 928 (3d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986); *Barrowclough v. Kidder Peabody & Co., Inc.,* 752 F.2d 923 (3d Cir.1985).

In *Zipf* the Court of Appeals held that in cases where a litigant pursues a claim that is based on pension rights created by contract, such as a claim to establish and enforce rights to benefits under 29 U.S.C. § 1132(a), he must first resort to and exhaust remedies that are available to him under his employer's pension plan. It is only when these internal plan remedies are pursued by a claimant fully and without satisfaction, that a litigant will be allowed to pursue these claims in a federal district court under ERISA.

The Third Circuit explained that:

[i]t is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits. This ensures that the appeal procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a non-adversarial setting, and creates a record of the plan's rationales for denial of the claim.

*Zipf,* 799 F.2d at 892.

However, when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated, these considerations are simply inapposite. The Court of Appeals in *Zipf* recognized that when claims are asserted that are "based on purely statutory rights created by ERISA," a litigant may assert them directly in a federal district court. *See Zipf,* 799 F.2d at 892. The Court in *Zipf* realized that:

[a claim brought under, for example, 29 U.S.C. § 1140] asserts a statutory right which plan fiduciaries have no expertise in interpreting. Accordingly one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent.

*Id.*

Further, there is a strong interest in judicial resolution of these claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions. Statutory interpretation is not only the obligation of the courts, it is a matter within their peculiar expertise. *Zipf v. American Tel. and Tel. Co.,* 799 F.2d 889, 893 (3d Cir.1986).

██ The plaintiff in the instant case seeks relief through allegations that fall into both categories. The plaintiff's allegations at Counts I and II set forth actions as to which exhaustion does not apply. However, Counts III and IV, being contractual, require internal plan remedy exhaustion. Each Count will now be considered in turn.

Count I sets forth allegations that are not primarily concerned with the issue of whether the plaintiff was entitled contractually to the benefits under the Corporate Pension Plan; rather, Count I is primarily concerned with the issue of whether the defendant, The Budd Company, or the persons who administer Budd Company pension plans, unlawfully interfered with the plaintiff's attainment of this right.[4]

Count II does not lend itself to the exhaustion rationale because the plaintiff seeks a remedy for misrepresentation that does not arise under ERISA. Also, the plaintiff's successful pursuit of his misrepresentation claim does not depend in any

---

**4.** It cannot be disputed that the plaintiff, in order to succeed on Count I, must prove his potential or actual entitlement to benefits under The Budd Company's Corporate Pension Plan.

Moreover, it can be argued cogently that this raises a contractual claim concerning The Budd Company's pension plans that must be brought into this forum only after the plaintiff exhausts

way on plaintiff's contractual entitlement to pension benefits.

 Conversely, Counts III and IV are claims for pension benefits allegedly created by contract. Accordingly, this Court holds as to Counts III and IV that plaintiff must pursue and exhaust his internal plan remedies before he may seek review in this Court of a pension plan administrator's decision to deny him pension benefits.

■ Finally, for reasons of judicial economy and out of fundamental fairness and equity, this Court will stay this action as described earlier in this opinion until plaintiff exhausts his internal plan remedies with respect to Counts III and IV. Plaintiff shall complete these procedures in accordance with this memorandum and in accordance with the following appropriate Order.

An appropriate Order follows.

### ORDER

AND NOW, this 5th day of August, 1987, upon consideration of defendants' motion for summary judgment (Docket Entry No. 14), plaintiff's answer to defendants' motion for summary judgment (Docket Entry No. 19), defendants' reply to plaintiff's memorandum of law in opposition to defendants' motion for summary judgment (Docket Entry No. 20), and plaintiff's reply memorandum to defendants' reply memorandum, and in accordance with the foregoing memorandum, it is hereby ORDERED that the defendants' motion for summary judgment is DENIED.

It is further ORDERED that plaintiff shall pursue and exhaust his internal plan remedies as to his claims at Counts III and IV of his complaint, if ever, within forty-five (45) days after the date this Court's Order is entered.

It is further ORDERED that The Budd Company and its employees that administer its pension plans shall, upon receiving the plaintiff's claims, process and judge these claims within a thirty (30) day period.

It is further ORDERED that until this process has been effected, this matter is STAYED.

---

his internal plan remedies. However, the question or issue of contractual entitlement is clearly subordinate in this situation to the claim that The Budd Company took steps purposefully to interfere with the plaintiff's attempts to attain this right. Under these circumstances, this Court holds that the contractual issue can and should be heard first in a federal forum rather than by plan administrators who have actively interfered with the plaintiff's pursuit of this contractual right. To the extent that exhaustion is mandated, this Court believes that its direction to plaintiff to exhaust internal plan remedies as to Counts III and IV would be sufficient to satisfy any exhaustion requirement that could be imposed by an appellate court on Count I.