675 A.2d 711

**Basile PAPPAS and Theodora Pappas, H/W**

**v.**

**David S. ASBEL, D.O. and Pennsylvania Hospital Insurance Co. (PHICO).**

**The COMMONWEALTH OF PENNSYLVANIA MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND (CAT FUND)**

**v.**

**UNITED STATES HEALTHCARE SYSTEMS OF PENNSYLVANIA, INC.**

**Appeal of PHICO INSURANCE COMPANY and The Pennsylvania Medical Professional Liability Catastrophe Loss Fund.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1996.

Filed March 15, 1996.

Reargument Denied May 23, 1996.

Stephen A. Ryan, Bala Cynwyd, for appellant.

Sheila A. Haren, Philadelphia, for Asbel, appellee.

Before KELLY and HOFFMAN, JJ. and MONTEMURO, Senior Judge.*

MONTEMURO, Senior Judge:

This appeal lies from an order granting summary judgment to appellee, United States Healthcare, Inc. (USHC), on the basis that the third party complaint of appellant Haverford Community Hospital is preempted by Section 1144(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*

On May 20, 1990, Basile Pappas, a subscriber to USHC, an HMO provided through his wife's employment, presented himself at the offices of his primary care physician, Dr. David Asbel, complaining of neck and shoulder pain. The treatment administered was an intramuscular injection of steroids. By the next day, Mr. Pappas' condition had deteriorated significantly, and, unable to walk, complaining of numbness in his arms, chest, abdomen and legs, he was transported to appel-

* Retired Justice assigned to Superior Court.

lant Haverford Community Hospital at 11:00 a.m. There, after examination and preliminary testing which revealed an abnormally elevated white blood cell count, Mr. Pappas was preliminarily diagnosed as suffering from a cervical epidural abscess which was compressing his spinal cord. Dr. Dickter, the emergency room physician responsible for Mr. Pappas' care, determined that the case constituted a neurologic emergency requiring further, immediate diagnosis and treatment at a university hospital with more extensive facilities than those available at Haverford.

After telephone consultation with Dr. Asbel, as well as Haverford's staff neurologist and neurosurgeon, arrangements were made by 12:30 to transfer Mr. Pappas to Thomas Jefferson University Hospital, which, possessing a spinal cord trauma unit, was able to assure Mr. Pappas' immediate admission. However, at 12:40 the ambulance service which was to transport Mr. Pappas informed the physicians at Haverford that as Jefferson was not an approved facility, authorization for Mr. Pappas' removal there was not forthcoming from USHC. At 12:50, Dr. Dickter telephoned USHC in an attempt to obtain authorization, and to do so quickly in view of the nature of the emergency. At 1:05, Dr. Dickter was informed by USHC that, after review, authorization for treatment at Jefferson was still being denied, but that Mr. Pappas could be removed to Hahnemann University, Temple University or Medical College of Pennsylvania. The USHC physician [1] who had made this decision refused to speak directly to Dr. Dickter, despite several requests that he do so, and after USHC was informed that Mr. Pappas' condition could worsen or become permanent. Rather, USHC's position was communicated through administrative personnel. Since Dr. Asbel expressed a preference for Hahnemann, that facility was contacted immediately but advised Haverford at about 2:20 p.m. that it would not have information on its ability to receive Mr. Pappas for at least another half hour. MCP was then reached and within minutes notified the physicians that it could accept Mr. Pap-

1. The record does not reveal the field of specialization of this physician, a Dr. Liebowitz.

pas, who was ultimately transported there at about 3:30 p.m. Mr. Pappas now suffers from permanent quadriplegia resulting from compression of his spine by the abscess.

Mr. Pappas brought suit against Asbel and Haverford, claiming various forms of malpractice as to the former, and as to the latter, negligence in causing an inordinate delay in transferring him to a facility equipped and immediately able to address the neurological emergency, thus exacerbating the compression of the spine which caused his quadriplegia. Haverford then filed a third party complaint against USHC, joining it as a party defendant for its refusal to authorize the transfer of Mr. Pappas to the hospital selected by the Haverford physicians, and adopting the negligence claims lodged against it in the original complaint. In his answer and new matter, Dr. Asbel filed a cross claim against USHC seeking contribution and/or indemnity. After filing both Answer and New Matter and Preliminary Objections, which failed to mention preemption, USHC successfully filed a motion for summary judgment alleging that the third party complaint should be dismissed, having been preempted by § 1144(a) of ERISA. This appeal followed,[2] presenting the question of whether ERISA was correctly determined to preempt Haverford's claim, characterized by appellant as a state law claim unrelated to ERISA or employee benefits, against USHC.[3]

**2.** Mr. Pappas' claims against Dr. Asbel and Haverford were settled by agreement of the parties, and Haverford's interests vis a vis USHC are now represented by the Pennsylvania Hospital Insurance Company and the Commonwealth of Pennsylvania Medical Professional Catastrophic Loss Fund.

**3.** There is no question that USHC is an employee benefits plan as defined by ERISA, 29 USCS § 1002(1):

The terms "employee welfare benefit plan" and welfare plan mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or maintained for the purpose of providing for its participants or beneficiaries, through the purchase of insurance or otherwise, (A) medical surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefits described in section 3023(c) of the Labor Management Rela-

168

In reviewing a grant of summary judgment we must determine whether, in view of the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, any genuine issue of material fact exists in the case, and, if not, whether the moving party is entitled to judgment as a matter of law. Moreover, the moving party's right to such a judgment must be clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 562 A.2d 279 (1989); Pa.R.C.P. 1035.

29 U.S.C. § 1144(a) reads in pertinent part as follows:

Except as provided in subsection (b) of this section, the provisions of this title ... shall supersede any and all State laws *insofar as they* may now or hereafter *relate to* any employee benefit plan ... (emphasis added).

It may, without fear of contradiction, be asserted that the Supremacy Clause, United States Constitution, Art. VI, expressly or by implication commands preemption of a state law where such law conflicts with federal law. *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). It is also well settled that ERISA's supersession provision is vast in its application. *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). However, the question still remains as to the precise reach of the phrase "insofar as they ... relate to ..." In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the United States Supreme Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 97, 103 S.Ct. at 2900. The trial court in this matter found that the allegations in Haverford's third party complaint all "f[e]ll within the rubric of administration of an employee benefit plan" because they concerned specific actions taken by USHC, namely its refusal to approve Mr. Pappas' transfer to a facility where the care he

tions Act, 1947 [29 USCS § 186(c)] (other than pensions on retirement or death, and insurance to provide such pensions).

needed was available immediately as the emergent nature of his condition required.

■ Because the limitations supplied by the cases attempting to define "relate to" are necessarily vague, the district and circuit courts which have considered the matter of HMO involvement are split on the precise extent of ERISA's reach. A number of federal court cases impose preemption on efforts to hold an HMO liable for injuries resulting from certain of its decisions on the basis that any attempt to seek redress constitutes an attack on the administration of the HMO, the position adopted by the trial court herein, and thus imposes a restriction such as the Act seeks to avoid. *See, e.g., Kuhl v. Lincoln National Health Plan*, 999 F.2d 298 (8th Cir.1993), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (claim against HMO for denying surgical precertification preempted by ERISA); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321 (1992), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992) (claims against HMO for failure to prcvide hospitalization to expectant mother resulting in death of unborn child). All of these cases have in common the reasoning that the state law claims involved necessarily "relate to" administration of the plans in question and are therefore preempted under the broad sweep of § 1144(a).

The United States Supreme Court, however, albeit in dealing with factual settings which differ from the sorts of claims involved in these cases, has refined the "relate to" language, thus truncating it to some extent. In *Mackey v. Lanier Collection Agency and Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), attendant upon a finding that a state garnishment action against participants in an ERISA plan providing vacation and holiday benefits was not preempted, the Court noted:

ERISA plans may be sued in a second type of civil action as well. These cases—lawsuits against ERISA plans for run of the mill state law claims such as unpaid rent, failure to pay creditors, **or even torts committed by an ERISA plan**—are relatively commonplace. Petitioners and the United States (appearing here as amicus curiae) concede

that these suits, although obviously affecting and involving ERISA plans and their trustees, are not preempted by ERISA § 514(a).

Id. at 833, 108 S.Ct. at 2187 (emphasis added).

In the recent case of *New York Blue Cross v. Travelers Insurance Co.,* —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Court has indicated that § 1144(a) may well be further limited. There, the Court examined a New York statute which requires hospitals to collect surcharges from patients covered by designated commercial insurers and imposes a surcharge on certain HMO's, but exempts from the surcharges those patients insured by a Blue Cross/Blue Shield plan. In holding that the surcharge provisions do not "relate to" employee benefit plans, the Court noted that the language of ERISA is so expansive as to be, for all practical purposes, infinite: unless read in conjunction with the structure and purpose of the statute as a whole, the words of limitation, "insofar as they ... relate to ...," are not limiting at all, and Congress' intention must be interpreted as a sham. *Id.* at ——, 115 S.Ct. at 1677. Rather, the Court determined to "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* The Court then observed that "[t]he basic thrust of the preemption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans," *id.* at ——, 115 S.Ct. at 1677–78, that is, to protect it from conflicting directives. However, the Court went on to note that "nothing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Id.* at ——, 115 S.Ct. at 1680. The Court extrapolated from its findings that "a law operating as an indirect source of merely economic influence on administrative decisions ... should not suffice to trigger preemption." *Id.*

This last is especially pertinent to the question presented here despite the variance in context. What is at issue is a

negligence claim identical to the one lodged against Haverford by Mr. Pappas in the underlying complaint. The type of recovery sought is based on negligence attributable to the delay occasioned by a cost containment protocol set by a for-profit organization, and which is aimed at conserving and increasing its profits, an intention diametrically opposed to ERISA's general purpose of protecting the rights of a plan's beneficiaries. Decisions such as that made by USHC concerning where Mr. Pappas might receive treatment are propelled by dollar savings, not the protection of worker's rights, in this case the right to the most effective medical care, which was the original focus of ERISA. In fact, the argument has never been advanced that the decision to withhold approval for transfer to Jefferson was at all related to medical considerations.

Considerations of cost containment of the type which drive the decision making process in HMO's did not exist for employee welfare plans when ERISA was enacted. It cannot therefore be argued that the type of recovery sought here was deliberately excluded from the Congressional schema in order to protect ERISA plans from conflicting directives which would, in attempting to control expenses, affect medical judgments. A tort claim such as that advanced here is, in fact, "an indirect source of merely economic influence on administrative decisions." *Id.* To find that such claims are preempted because they may interfere with what is in essence a business decision made in the financial interests of a commercial entity is inconsistent with the intention of ERISA and should not "suffice to trigger preemption." *Id.*

This conclusion is consistent with cases in which courts found that a particular state claim is not preempted, based on the rationale that the state law involved affects ERISA in an indirect manner, or is so tenuous or remote as to obviate the necessity for preemption. *Greenblatt v. Budd*, 666 F.Supp. 735, 741 (E.D.Pa.1987) (common law action for misrepresentation by employee whose pension benefits were denied after company merger not preempted.) To make such a determination, it is the state statute which must be examined,

and an assessment made of whether the action represents exercise of a classically important state function preempted neither expressly or impliedly by ERISA. *Id.* Contrast, *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236 (5th Cir.1009) (action for deceptive trade practices by health care provider against plan trustees not preempted, because enforcing allocation of risks between commercial entities conducting business in a state is a classically important state interest, and because health care provider is not a party to plan.) General health care regulation is, as has already been noted, traditionally an area of state concern. *New York Blue Cross, supra.*

■ While decisions of the federal district courts and courts of appeal, including those of the Third Circuit, are not binding on Pennsylvania courts, even where a federal question is involved, *Breckline v. Metropolitan Life Insurance Company*, 406 Pa. 573, 578, 178 A.2d 748, 751 (1962), they are both persuasive as to federal questions, *Chiropractic Nutritional Associates, Inc. v. Empire Blue Cross and Blue Shield, Inc.*, 447 Pa.Super. 436, 445, 669 A.2d 975, 980 (1995), and those of the Third Circuit are appropriate for this court to follow where the United States Supreme Court has not spoken. *Id.* In *Dukes v. US Healthcare, Inc.*, 57 F.3d 350, 357 (3d Cir. 1995) (claims for direct negligence of HMO remanded to state court for determination of whether preemption was mandated),[4] the Third Circuit recognized that "Quality control of benefits … is a field traditionally occupied by state regulation, and we interpret the silence of Congress as reflecting an intent that it remains so." *See also, Independence HMO, Inc. v. Smith*, 733 F.Supp. 983 (1990) (state court action for medical malpractice under ostensible agency theory not preempted by ERISA).

4. Appellee argues that this case is inapposite as it concerned only the issue of whether it was proper to remove the case to federal court based on ERISA's preemption provision—no decision was reached as to whether this provision actually applied. However, as appellant points out, the court was not able to articulate any plan-created right that was threatened by the plaintiffs' state law negligence claims. Had it been able to do so the decision as to preemption would not even be regarded as equivocal; the claim would have been dismissed.

In *Krashna v. Oliver Realty Inc.*, 895 F.2d 111 (3d Cir. 1990), albeit in another context, the Court of Appeals for the Third Circuit stated that in order to show that what purports to be a state law claim is completely preempted by federal statute, two factors must be shown:

First, "the statute relied upon by the defendant as preemptive [must] contain[ ] civil enforcement provisions within the scope of which the plaintiff's state claim falls." ... The federal statute must subsume the interest vindicated by the state law, not the remedy provided.... Second, there must be "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law."

*Id.* at 114, quoting *Railway Labor Executives Ass'n. v. Pittsburgh & L.E. R.R.*, 858 F.2d 936, 942 (3d Cir.1988). *See also, Plucinski v. I.A.M. National Pension Fund, et al*, 875 F.2d 1052 (3d Cir.1989) (In accountancy malpractice case brought by a plan, the conclusion was reached that ERISA does not generally preempt state professional malpractice claims.)

ERISA's civil enforcement provision, § 1132(a)(1)(B), permits beneficiaries of employee welfare plans to "recover benefits due ... under the terms of the plan," "to enforce ... rights under the terms of the plan or to clarify rights to future benefits under the terms of the plan." As the *Dukes* court observes,

Inherent in the phrases "rights under the terms of the plan" and "benefits due ... under the terms of [the] plan" is the notion that plan participants and beneficiaries will [by means of litigating tort claims] receive something to which they would not otherwise be entitled. But patients enjoy the right to be free from medical malpractice regardless of whether or not their medical care is provided through an ERISA plan. *Id.* at 358.

This court has ruled that negligence claims are not preempted by ERISA, as they are not "related to" it. *See, McClellan v. Health Maintenance Organization of Pennsylvania*, 413 Pa.Super. 128, 604 A.2d 1053, *appeal denied*, 532 Pa.

664, 616 A.2d 985 (1992) (suit based on liability of HMO for negligence of agent/physician and on intentional misrepresentation or fraud by HMO itself); *DeGenova v. Ansel*, 382 Pa.Super. 213, 555 A.2d 147 (1988) (suit based on vicarious liability of HMO for the negligence of its agent/physician). Nor are these claims covered by ERISA's civil enforcement provisions. The *DeGenova* court specifically found that the "appellants were not seeking ERISA benefits or claiming improper distribution or administration of ERISA benefits," *Id.* at 219, 555 A.2d at 150, and thus preemption did not apply.

The negligence claims at issue here too have, in fact, no connection to the benefit scheme which Congress sought to protect by preempting laws tending to produce conflicting systemic demands; ERISA is in no way implicated by the claim that USHC negligently caused Mr. Pappas' injuries by its delay in authorizing his transfer. Appellants do not seek benefits denied, because Mr. Pappas was transferred to a hospital capable of supplying the needed services; they do not seek to challenge the administration of the Plan, again because there is no complaint that USHC did not perform its duties. Rather, the argument is that USHC performed its duties in a negligent manner given the exigent nature of the emergency. Finally, if the original complaint had claimed that USHC was vicariously liable because of the negligence of its contracting agents, Dr. Asbel and Haverford, in securing Mr. Pappas' transfer, there would be no question under *McClellan* and *DeGenova* that the claim would withstand preemption.

As the *Corcoran* court points out, to conclude that the preemption of all other claims was incorporated into Congress' intent in enacting ERISA necessarily assigns to Congress the concomitant intent to deprive plaintiffs injured by such negligence of any remedy, state or federal, for serious errors perpetrated by HMO's. However, the Supreme Court of the United States, in analyzing the application of preemption clauses in other statutes, found it "difficult to believe that Congress would, without comment, remove all judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr–McGee Corporation*, 464 U.S. 238, 251, 104 S.Ct. 615,

623, 78 L.Ed.2d 443 (1984) (Award of punitive damages arising out of escape of plutonium from federally licensed nuclear facility not preempted by Atomic Energy Act). *See also, United Construction Workers v. Laburnum Construction Corporation*, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954).

We, too, do not believe that Congress can have intended, prior even to invention of the cost containment system which inheres in USHC's review process, to foreclose recovery to plan beneficiaries injured by negligent medical decisions. We therefore conclude that the negligence claims against appellee are not preempted by ERISA.

■ The question then becomes what, if any, impact the procedural posture of this case has on the implementation of the preemption provision. The trial court concedes that the "no relation" theory may be a valid one, but concludes that because Haverford Hospital and not Mr. Pappas joined USHC as a party defendant, no theory of recovery which would otherwise be available could apply. Pa.R.C.P. 2255(d) dispenses with such a distinction:

> The plaintiff shall recover from an additional defendant found liable to him alone or jointly with the defendant as though such defendant had been joined as a defendant and duly served and the initial pleading of the plaintiff had averred such liability.

*See also, Solomon v. Cedar Acres East, Inc.,* 455 Pa. 496, 317 A.2d 283 (1974).

■ The effect of a third party complaint joining an additional defendant is thus to make the additional defendant "immediately subject to the plaintiff's claim in every respect and with the same force and effect as if the additional defendant had been originally named as the defendant" in the plaintiff's complaint. *3 Standard Pennsylvania Practice 2d* (1994), § 14:359. The character of the claim does not alter with the procedure used to present it.

Accordingly, we reverse the trial court's order granting summary judgment and remand for further proceedings consistent with this Opinion.