38 A.3d 770

**Lawrence J. BARNETT, Christine Cookenback, James M. Defeo and Madlin Laurent, Appellees**

v.

**SKF USA, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued May 10, 2011.

Decided Feb. 21, 2012.

464

Kevin Dooley Kent, Conrad O'Brien PC, Philadelphia, Geoffrey L. Beauchamp, Willow Grove, Louis C. Bechtle, Mark Edward Seiberling, Conrad O'Brien PC, Philadelphia, for SKF USA, Inc.

Edmunds Jazeps Brokans, Lansdale, Ekta Balvant Patel, Edward S. Wardell, Wardell Craig Annin & Baxter, L.L.P., for Lawrence J. Barnett, Christine Cookenback, James M. DeFeo and Madin Laurent.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice TODD.

In this appeal, we consider whether Section 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"),[1] 29 U.S.C. § 1144(a), preempts the breach of contract claim asserted by Appellees Lawrence J. Barnett, Christine Cookenback, James M. Defeo, and Madlin Laurent against Appellant SKF USA, Inc. ("SKF" or "Company") under Pennsylvania law. For the reasons stated below, we hold that Appellees' claim is preempted, and, accordingly, we reverse the Superior Court's order affirming the trial court's denial of summary judgment in favor of SKF.

At all relevant times, Appellees were salaried, non-unionized, employees of SKF, working in its Philadelphia plant. The Company also employed hourly unionized employees ("union workers") at the plant. In January 1991, SKF announced its decision to shut down the plant and terminate the employment of all those working there in relatively short order. Over the course of the ensuing year, the effect of the closing on employee retirement rights and benefits became a subject of collective bargaining between SKF and its union workers, and a matter of discussion between Appellees and their supervisors.

Appellees' retirement and pension rights were set forth in the "Pension Plan for Salaried Employees of SKF Industries, Inc." (the "Plan"), an ERISA plan,[2] which SKF maintained and administered.[3] Articles 4 and 5 of the Plan covered "Retirement Dates" and "Retirement Benefits," respectively. Under Section 4.01, a member's "Normal Retirement Date"

1. Pub.L. No. 93–406, 88 Stat. 829, as amended, 29 U.S.C. § 1002 *et seq.*

2. ERISA defines an "employee benefit plan" as, *inter alia,* "an employee pension benefit plan." 29 U.S.C. § 1002(3). The term "employee pension benefit plan" is further defined as "any plan . . . established or maintained by an employer . . . to the extent . . . such plan . . . provides retirement income to employees." *Id.* § 1002(A)(i). Presently, it is undisputed that the Plan falls within the ambit of ERISA. Likewise, it is undisputed that Appellees were members of the Plan.

3. The Plan is attached as Exhibit C to SKF's Renewed Motion for Summary Judgment.

was the last day of the month during which he or she reached age 65, and, under Section 5.01, a member who retired at that age was entitled to a "Normal Form of Retirement Benefit." Section 4.02(b) provided for "Early Retirement Without Actuarial Reduction" and entitled a member, who was not yet 65 years of age, but whose service with SKF ceased by reason of a permanent plant shutdown, to retire and receive an immediate pension, as long as he or she had a specified number of years of service and had reached a specified age. For the Philadelphia plant, a Section 4.02(b) retirement required 20 years of service and 45 years of age as of the date of the cessation of a member's service. Article 6 covered "Termination of Service" and set forth the benefit rights of a member whose service with the Company terminated for any reason other than death or retirement. Under Section 6.01, a member with at least 10 years of service was entitled to a deferred vested retirement benefit, payable for life, commencing upon his or her normal retirement date at 65 years of age or any month following his or her 55th birthday. If a member elected to receive benefits at any point upon reaching age 55, but before reaching age 65, the benefit amount to be paid was his or her deferred vested retirement benefit multiplied by a factor, ranging from .5000 for a retirement age of 55 to .9333 for a retirement age of 64.

When SKF announced its decision to shut down the Philadelphia plant, each of the Appellees had 20 years of service with the Company, but would not reach 45 years of age by the time of the anticipated closure. Consequently, for Appellees, early retirement under Section 4.02(b) of the Plan would not be available and their rights of retirement would be governed, instead, by Section 6.01.

Appellees became aware that, as a result of collectively bargaining the effects of plant closing, SKF agreed that any union worker with 20 years of service and 45 years of age, as of March 10, 1993, the date on which the collective bargaining agreement then in effect expired, would be entitled to receive an immediate and full pension. This entitlement was referred to as the "creep provision" or "creep benefit" because it

permitted certain employees to "creep" into retirement rights and pension benefits that a separate ERISA pension plan SKF maintained and administered for its union workers did not provide. Deposition of John Dobrzanski (Exhibit H to SKF's Renewed Motion for Summary Judgment), at 65. Prior to the plant closing, the pension plan covering SKF's union workers was amended to incorporate the creep provision.

Appellees approached SKF's Director of Human Resources to inquire whether they too would be given the creep provision, since they would satisfy its requirements. According to Appellees, on two occasions, in order to induce them to remain with the Company until the plant closing, the Director of Human Resources orally stated, when asked about the Company's intention regarding the creep provision: "If the Union gets it, you'll get it." Deposition of James M. Defeo (Exhibit B to SKF's Renewed Motion for Summary Judgment), at 33, 42, 51. In a letter dated June 17, 1991, sent to the plant's manager, Appellees stated:

This letter is a request to clarify our status as Salary employees affected by the so-called "Creep Provision" that was offered to the hourly employees.... We recognize the fact that we are not a party to the Company/Union agreement, however, we believe that it is morally correct that we receive the same consideration. All of us have been loyal employees of SKF and will have the required 20 years of service and age requirement of 45 years by the end of the labor agreement in March 1993.

Deposition Exhibit Dobrzanski–1 (letter dated June 17, 1991). By September 1, 1991, Appellees' employment with SKF was terminated, and, in December 1991, the Philadelphia plant closed. The Plan was not amended to contain the creep provision.

In January 1992, Appellees Defeo and Barnett both received a letter from SKF's Compensation and Benefits Manager informing them that they met the Plan's requirements for a deferred vested pension. Reflecting the terms of Section 6.01 of the Plan, the letter stated they could each begin receiving their pension on their normal retirement date of age 65, or on

their early retirement date of age 55, or on a retirement date in between ages 55 and 65. After advising them of the pension amount they would receive in monthly payments for their lifetimes if they elected to have their pensions start at age 65, the letter stated: "If you elect to have your pension start at age 55, you [will] receive 50% of [that amount]. If you elect to have your pension start between age 55 and age 65, your pension amount [will] be greater than 50%, but less than 100% of [that amount] depending upon your age." Deposition Exhibit Defeo–7 (Letter dated January 23, 1992); Exhibit Barnett–4 of Deposition of Lawrence J. Barnett (Letter dated January 23, 1992) (Exhibits B & D to SKF's Renewed Motion for Summary Judgment). Subsequently, in 2002, Appellees Defeo and Barnett, both 55 years of age, each submitted an "Application for Pension" with SKF. The Applications were consistent with the letters received in 1992 from SKF's Compensation and Benefits Manager and did not contemplate the receipt of a full pension, but, rather, set forth a pension amount that was multiplied by an "actuarial factor of 50%." Appellees' Expert Report (Attachments 1 and 2, Exhibit I to SKF's Renewed Motion for Summary Judgment).

Two years after their employment with SKF was terminated, and prior to the submission of pension applications, on September 29, 1993, Appellees Defeo, Barnett, Cookenback and Laurent commenced a breach of contract action against SKF in the Montgomery County Court of Common Pleas. In their single-count complaint, Appellees alleged that, throughout the course of their employment with the Company, they were employed under the same or better terms and conditions, including "pension eligibility," as SKF's union workers. Complaint at ¶¶ 9–10. Appellees further alleged that SKF promised that they, like certain union employees, "would be allowed to 'creep' [into] full pension benefits upon termination of employment from the plant closing, even though they would not have reached age 45" by that point in time, as long as they remained in the Company's employ. *Id.* at ¶ 11. Appellees averred that, although they continued with SKF until the plant closure, they were denied that which was given to

certain union employees: "credit for services for early retirement under the same 45–20 plan eligibility" and "full pension benefits." *Id.* at ¶¶ 13, 14. Based on these allegations, Appellees claimed that SKF's conduct constituted a breach of contract. By way of damages, Appellees sought: (1) the pension benefits they lost from September 1, 1991 to December 31, 2002, in not having been paid an immediate and full pension benefit upon their termination as SKF employees in 1991; and (2) the pension benefits they lost after December 31, 2002, which amounted to the difference between the diminished monthly pension benefit they received upon retirement at age 55 and the larger monthly benefit amount receivable under the Plan upon retirement at age 65.[4]

SKF filed preliminary objections to the complaint, arguing that Appellees' cause of action was preempted by Section 514(a) of ERISA. The trial court denied the preliminary objections on August 2, 1994, and discovery proceeded and closed in 1997. On February 27, 2004, SKF filed a motion for summary judgment on the grounds of ERISA preemption, which was denied.[5] On January 30, 2007, SKF renewed its motion raising ERISA preemption, asserting that *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566 (3d Cir.2006), a decision by the Court of Appeals for the Third Circuit, compelled a finding of ERISA preemption. Again, the trial court denied SKF's motion, concluding Appellees' action was simply a contract dispute between employees and their former employer, the outcome of which would not affect the administration of an

4. Appellees' theory of damages was set forth in Appellees' Expert Report, in which these amounts in "Lost Pension Benefits" were calculated for Appellees Barnett and Defeo. According to the report, the amounts in lost pension benefits for Appellees Barnett and Defeo are $195,529.31 and $263,271.14, respectively. The report did not calculate the amounts in lost pension benefits for Appellee Cookenback or for Appellee Laurent.

5. The lull in activity in this case from the time discovery closed in 1997 until the filing of SKF's motion for summary judgment in 2004 is unexplained. The docket shows that Appellees' case was terminated and removed from active status by the Prothonotary of the Court of Common Pleas of Montgomery County in April 2003, and reinstated to active status in June 2003, when the trial court granted Appellees' petition to vacate case termination.

ERISA plan or impose any obligations on an ERISA plan or its administrator, and, thus, was not preempted by ERISA. On December 27, 2007, SKF sought permission to file an interlocutory appeal under Pa.R.A.P. 312, which was granted by the Superior Court.

On appeal, a divided panel of the Superior Court affirmed in a published opinion, authored by Judge Jack Panella and joined by Judge Cheryl Allen, holding that the trial court did not err in denying SKF's motion for summary judgment based on ERISA preemption. *Barnett v. SKF USA, Inc.*, 4 A.3d 1057 (Pa.Super.2009). Observing that Section 514(a) of the Act supersedes state laws insofar as they "relate to" an ERISA plan, the court determined the central question it was required to answer was whether "the state law [in question] does, in fact, relate to an employee benefit plan falling under this section." *Id.* at 1060 (quoting 29 U.S.C. 1144(a)). Based on this Court's recognition that ERISA "preemption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans," *id.* (quoting *Pappas v. Asbel ("Pappas II")*, 564 Pa. 407, 412–13, 768 A.2d 1089, 1092 (2001), *confirming upon reconsideration, Pappas v. Asbel ("Pappas I")*, 555 Pa. 342, 724 A.2d 889 (Pa.1998)), the Superior Court concluded: "Appellees' cause of action neither impacts upon the Appellees' employee benefit plan at issue here, or ERISA. As such, preemption of Appellees' cause of action under ERISA is clearly not required." *Id.* The court reasoned that, although Appellees' complaint referenced the pension plans SKF maintained for its employees, the reference was included only to demonstrate SKF's practice of providing salaried employees with the same or enhanced benefits as those provided to union employees. *Id.* at 1061.

In reaching its determination, the Superior Court relied on *Greenblatt v. Budd Co.*, 666 F.Supp. 735 (E.D.Pa.1987), in which the federal district court held that an employee's claim made against his employer for misrepresenting that his pension benefits would be made equal to benefits available to comparable employees was not preempted by Section 514(a). The court reasoned that, similar to the claim asserted in

*Greenblatt,* Appellees' breach of contract claim did not relate to an ERISA plan under Section 514(a) because the oral contract for enhanced benefits on which Appellees sued was made by one of their superiors, as their employer, and not as a Plan fiduciary, and arose in the ordinary course of business, and not in the course of administering an ERISA plan. *Barnett,* 4 A.3d at 1061.

Finally, the Superior Court rejected SKF's assertion that this case was controlled by the Third Circuit's decision in *Hooven.* After observing it was not bound by the decision of an intermediate federal appellate court, the court distinguished *Hooven* on the basis that, unlike the plaintiffs therein, who asserted both state law and ERISA claims, Appellees did not allege an ERISA claim nor bring their oral breach of contract claim as an ancillary action to an ERISA claim. *Id.* at 1062. "Indeed," the court added, "had Appellees attempted the latter, their oral breach of contract action would have undoubtedly failed, as all claims brought under ERISA must be based upon a writing." *Id.* at 1063. Judge Jacqueline Shogan noted her dissent without opinion.

 SKF sought allowance of appeal in this Court, which we granted to determine whether Appellees' state common law breach of contract claim is preempted by ERISA. *Barnett v. SKF USA, Inc.,* 607 Pa. 307, 5 A.3d 815 (2010) (order).[6]

 We begin our analysis by observing that ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). It has long been recognized that one of Congress' principal goals in enacting the Act was to ensure

6. Under our standard of review of an order granting or denying a motion for summary judgment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment is properly entered only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Pappas I,* 555 Pa. at 346, 724 A.2d at 891. Our scope of review is plenary, and our review of a question of law, as presented here, is *de novo. Id.*

that, upon retirement, employees receive the pension benefits to which they are entitled. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). It was also Congress' aim to ensure the proper administration of pension plans, both during the years of an employee's active service and in his or her retirement years. *Boggs v. Boggs*, 520 U.S. 833, 839, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).

■ We further observe that, in this case, as in any preemption case, in determining whether a state law is preempted by federal law under the Supremacy Clause of the United States Constitution, we adhere, as we must, to the principles the United States Supreme Court has articulated. *See Dooner v. DiDonato*, 601 Pa. 209, 218, 971 A.2d 1187, 1193 (2009) (*citing* U.S. Const. art. VI, cl. 2). The high Court has repeatedly stated that federal preemption of state law turns on the intention of Congress and begins with the presumption that Congress does not intend to supplant state law. *See, e.g., New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In addition, the Court has repeatedly recognized that the Supremacy Clause may entail preemption of state law either by express provision, by implication, or by a conflict between federal and state law, and has instructed that, in an express preemption case, the analysis begins "with the text of the provision in question and move[s] on, as need be, to the structure and purpose of the Act in which it occurs." *Id.* at 655, 115 S.Ct. 1671.

■ Section 514(a), the ordinary preemption provision of ERISA,[7] states: "Except as provided in subsection (b) of this

---

7. There are two distinct types of preemption under ERISA. The first, referred to as ordinary preemption, is asserted under Section 514(a) of the Act, and provides the defendant with a federal defense to the plaintiff's state law cause of action, which, if established, requires its dismissal. 29 U.S.C. § 1144(a); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 682 (3d Cir.2000). The second, referred to as complete preemption, is asserted under Section 502(a), which is the Act's civil enforcement and remedies section. 29 U.S.C. § 1132(a); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55

section, *the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan* described in *section 1003(a)* of this title and not exempt under *section 1003(b)* of this title." 29 U.S.C. § 1144(a) (emphasis added).[89] Given its text, the Court has long acknowledged that Section 514(a) is "conspicuous for its breadth," "broadly worded," and "clearly expansive." *California Div. of Labor Standards Enforcement v. Dillingham Construction N. A., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

In point of fact, the Supreme Court gave ERISA preemption an almost breathtaking sweep at one time, declaring that the words of Section 514(a) were to be construed according to their "broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pappas I,* 555 Pa. at 348, 724 A.2d at 892 (quoting *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. 2380) (internal quotation marks omitted); *Pappas II,* 564 Pa. at 412–13, 768 A.2d at 1092. Thus, in the vast majority of cases concerning ERISA preemption addressed by the Court in the 1980's and early 1990's, the Court concluded without hesitation that, under Section 514(a), the state laws under review were preempted because they related to an ERISA plan. *See Pappas I,* 555 Pa. at 348, 724 A.2d at 892; *Pappas II,* 564 Pa. at 412–13, 768 A.2d at 1092.

(1987). When applicable, complete preemption converts an ordinary state common law claim into one stating an ERISA claim, even though an ERISA claim is not alleged on the face of the complaint. Complete ERISA preemption gives a district court federal question jurisdiction and subjects the claim to removal. *Id.* This appeal raises only the question of ordinary preemption under Section 514(a) of ERISA.

8. None of the exceptions to or exemptions from Section 514(a)'s operation is presently in issue.

9. We note that Section 514(c) of the Act defines "State law" as including "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). A state common law cause of action, as is alleged here, is "State law," which may be subject to ERISA preemption. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

In 1995, however, the high Court noticeably changed tack and retreated from its view that a common-sense application of the words in Section 514(a) to the circumstances presented in a particular case was sufficient to determine the issue of ERISA preemption. *See Pappas I*, 555 Pa. at 348, 724 A.2d at 892; *Pappas II*, 564 Pa. at 412–13, 768 A.2d at 1092. In *Travelers*, the Court recognized that its prior attempts to construe Section 514(a) were little help in drawing the parameters of ERISA preemption, and acknowledged that "[i]f 'relate to' [in Section 514(a)] were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" *Travelers*, 514 U.S. at 655, 115 S.Ct. 1671 (citation omitted). Accordingly, in order to give effect to both the starting presumption that Congress does not intend to supplant state law and the words of limitation Congress included in Section 514(a), the *Travelers* Court announced a new standard for analyzing ERISA pre-emption: "We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. 1671.

With respect to these guiding objectives, the Court reiterated that Congress crafted ERISA's preemption provision to establish the regulation of employee pension and welfare benefit plans "as exclusively a federal concern;" to "ensure that plans and plan sponsors would be subject to a uniform body of benefits law;" to "minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government;" and to prevent "the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *Id.* at 656–57, 115 S.Ct. 1671 (citations and internal quotation marks omitted).

Next, the *Travelers* Court considered Section 514(a)'s objectives, relative to the New York statute in question in that case,

which required surcharges on certain employee healthcare plans and HMOs, and evaluated the effect the statute had on ERISA plans. The Court concluded the statute did not relate to an ERISA plan and, thus, was not preempted because, even though the statute had an indirect economic impact on choices that ERISA plans made for healthcare coverage, it did not bind plan administrators to any particular choice and thereby function as a regulation of an ERISA plan itself, did not preclude uniform administrative practices, nor did it subject ERISA plans to conflicting directives. *Id.* at 662, 115 S.Ct. 1671.

In the latter part of the 1990s, the high Court continued the trend it started in *Travelers*. In *Dillingham*, the Court considered whether California's prevailing wage law was subject to ERISA preemption. Before deciding that precise question, the Court acknowledged that in *Travelers*, it recognized that "an uncritical literalism" in applying Section 514(a)'s language had offered "scant utility in determining Congress' intent as to the extent of [ERISA's preemptive] reach," and confirmed that the issue of preemption was to be decided by looking "to 'the objectives of the ERISA statute . . .' as well as to the nature of the effect of the state law on ERISA plans." 519 U.S. at 325, 117 S.Ct. 832 (quoting *Travelers*, 514 U.S. at 658–59, 115 S.Ct. 1671). Applying this test, the Court concluded that the California statute did not relate to an ERISA plan because it was, in relevant respects, indistinguishable from the New York surcharge program at issue in *Travelers*. The Court held: "The prevailing wage statute alters the incentives, but does not dictate the choices, facing ERISA plans. In this regard, it is 'no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate.'" *Id.* at 334, 117 S.Ct. 832 (quoting *Travelers*, 514 U.S. at 668, 115 S.Ct. 1671).[10]

10. In *Dillingham*, the Court pointed out that its efforts at applying Section 514(a) yielded a two-part inquiry for deciding whether a state law relates to an ERISA plan: A law "relates to" a covered employee benefit plan for purposes of § 514(a) "if it [1] has a connection with or [2] reference to such a plan." *Id.* at 325, 117 S.Ct. 832 (citations and

The Court revealed its evolving view of ERISA preemption in another 1997 preemption case, *Boggs, supra,* by analyzing Section 514(a) preemption principally through the prism of traditional conflict preemption principles.[11] In *Boggs,* the surviving second wife of a deceased pension plan participant sought a declaratory judgment that ERISA preempted application of Louisiana's community property laws under which the decedent's first wife could have transferred her interest in the undistributed pension plan benefits by a testamentary instrument.

Concluding that the Louisiana law related to an ERISA plan and was preempted under Section 514(a), the Court stated: "We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects. We hold that there is a conflict, which suffices to resolve the case." 520 U.S. at 840, 117 S.Ct. 1754. The Court explained that the state law conflicted with the joint and survivor annuity provi-

internal quotation marks omitted; alterations in original). Under the latter inquiry, the Court noted, it held to be preempted: a law that imposed requirements by specific reference to ERISA welfare benefit plans; a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision; and a common-law cause of action for wrongful discharge, the elements of which were expressly premised on the existence of an employee pension plan and an employer's aim to interfere with ERISA rights. *Id.* (referring to *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 828, n. 2, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). The Court then added: "A law that does not refer to ERISA plans may yet be pre-empted if it has a 'connection with' ERISA plans." *Id.* In the instant case, as the state law contract cause of action we consider makes no reference to an ERISA plan, our inquiry concerns whether Appellees' claim is related to an ERISA plan under Section 514(a) because it has a connection with an ERISA plan.

11. The *Boggs* Court explained: "Conventional conflict pre-emption principles require pre-emption 'where compliance with both federal and state regulations is a physical impossibility, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 844, 117 S.Ct. 1754 (quoting *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)) (alterations in original).

.

sion in ERISA, which ensured a stream of income to surviving spouses: ERISA's "solicitude for the economic security of [surviving] spouses would be undermined by allowing [under state law] a predeceasing spouse's heirs and legatees to have a community property interest in the survivor's annuity." *Id.* at 843, 117 S.Ct. 1754. Thus, the Court held: "In the face of this direct clash between state law and ERISA's provisions and objectives, the state law cannot stand." *Id.* at 844, 117 S.Ct. 1754.

The high Court's revised approach to determining Section 514(a)'s preemptive reach was evident most recently in *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). In *Egelhoff*, the Court determined that a Washington statute, which provided for the automatic revocation, upon divorce, of any designation of a spouse as a beneficiary of a non-probate asset, had a connection to ERISA plans under Section 514(a), and, thus, was preempted on two grounds.[12] First, the Court reasoned that the state statute, in directing ERISA administrators to pay the beneficiaries chosen by state law, rather than those beneficiaries named in the plan documents, implicated an area of core ERISA concern and ran counter to ERISA's commands that a plan specify the basis on which payments are made and that a fiduciary administer the plan in accordance with plan documents. *Id.* at 147, 121 S.Ct. 1322 (citing 29 U.S.C. §§ 1102(b)(4), 1104(a)(1)(D)). Second, upon observing that the statute did not allow plan administrators simply to make payments to the beneficiary specified by the plan documents, but, rather, required them to familiarize themselves with state statutes to determine whether the named beneficiary's status was revoked by operation of law, the statute interfered with the goal of nationally uniform plan administration. *Id.* at 148–49, 121 S.Ct. 1322.

■ With these principles in mind, we turn to the parties' arguments. SKF contends that Appellees' cause of action

12. *Egelhoff* guided this Court in *In re Estate of Paul J. Sauers, III*, 32 A.3d 1241 (Pa.2011). There, we held that Section 514(a) of ERISA preempted Section 6111.2 of the Pennsylvania Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 6111.2.

seeks "enhanced pension benefits based upon early pension vesting rights." Brief of Appellant at 20. Thus, according to SKF, Appellees' claim, brought under Pennsylvania contract law, relates to an ERISA plan within the meaning of Section 514(a) because it undercuts the statute's aim to secure a national regulatory framework for determining the question of a retiree's entitlement to ERISA benefits. Furthermore, SKF argues, Appellees' claim is preempted because it directly contradicts ERISA's command that benefits be administered in accordance with the written plan. Moreover, SKF posits, since Appellees' claim involves the pursuit of pension benefits outside of ERISA's framework, the Third Circuit's decision in *Hooven*, which categorically disallowed such a claim, should be followed. Finally, SKF asserts that the Superior Court's decision below, in implying that a state common law claim is not subject to preemption as long as the plaintiff does not assert a federal ERISA claim, cannot stand, as it creates a new and unsupportable test for ERISA preemption.

For their part, Appellees counter that the lawsuit they brought is premised on an oral promise that they would be paid "the value of the same severance benefits offered to other employees if they remained employed with [the] company until the plant closed." Appellees' Brief at 13. Thus, they assert, their cause of action does not concern pension benefit rights, but rather a promised severance payment, in which Plan benefit amounts are merely a measure of that promised payment. As such, Appellees argue, their claim has, at most, a remote connection to the Plan, and accordingly, does not relate to an ERISA plan for purposes of preemption under Section 514(a). Appellees also contend that their lawsuit will not affect the administration of an employee benefit plan because the severance payment SKF is obligated to pay them is not based on the Plan. In addition, Appellees urge that we, like the Superior Court panel majority, follow the *Greenblatt* case, and that we heed the decision in *Stevenson v. Bank of New York, Inc.*, 609 F.3d 56 (2d Cir.2010), which, they assert, demonstrates far too broad a reading of Section 514(a) by SKF.

As the parties' arguments indicate, the application of Section 514(a) in the instant case turns on the true essence of the promise allegedly made by SKF, which forms the foundation of Appellees' state law contract claim. In our view, the record does not support, as Appellees assert, that the promise they claim to have received from the Company was for the payment of a severance, the monetary value of which would be measured by the pension benefits they would have been paid had they been entitled to rights of immediate retirement under the Plan at the time their service with the Company ended. Rather, the record consistently reveals that the commitment Appellees believe they were given, and, in this action, seek to enforce, is the receipt of the so-called creep benefit—that is, the right to retire early, in 1991, and the right to be paid a full pension from that point forward. The record further reveals that whatever rights to retirement and retirement income Appellees are owed, the Plan is their source.

Accordingly, when we "look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive' as well as to the nature of the effect of the state law on ERISA plans," as the Supreme Court has instructed, we must conclude that Appellees' contract claim relates to an ERISA plan under Section 514 and is thus preempted. *See Dillingham*, 519 U.S. at 325, 117 S.Ct. 832 (quoting *Travelers*, 514 U.S. at 658–59, 115 S.Ct. 1671). In short, if Appellees' suit were allowed to proceed and they secured the retirement rights and pension benefits they seek, via enforcement of the allegedly promised creep provision, core ERISA matters, *i.e.* the administration of retirement rights and payment of pension benefits, would cease to be areas of exclusive federal regulatory concern. *See Egelhoff*, 532 U.S. at 147, 121 S.Ct. 1322; *Travelers*, 514 U.S. at 656–57, 115 S.Ct. 1671. Further, if Appellees were to acquire retirement rights and pension payments under Pennsylvania's common law of contracts, rather than pursuant to the terms of the ERISA plan which provides them with any such rights in the first place, the basic thrust of Section 514(a), to secure a unified body of federal benefits law that avoids subjecting a

plan administrator to differing and possibly conflicting substantive state standards for determining entitlement to ERISA rights and benefits, would be subverted. *See Egelhoff,* 532 U.S. at 147, 121 S.Ct. 1322; *Travelers,* 514 U.S. at 656–57, 115 S.Ct. 1671. Moreover, because there are no provisions in the Plan granting Appellees the retirement rights and pension benefits they pursue, Appellees' cause of action requests relief which would bind an administrator to pay benefits established under state law, rather than pay the benefits the Plan identifies as due, and so is inconsistent with ERISA's directives. *Boggs,* 520 U.S. at 844, 117 S.Ct. 1754. That is, granting Appellees relief via state common law countermands ERISA's mandates that "[e]very employee benefit plan shall . . . specify the basis on which payments are made to and from the plan" and that "[a] fiduciary shall discharge his duties . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. §§ 1102(b)(4), 1104(a)(1)(D); *Egelhoff,* 532 U.S. at 147, 121 S.Ct. 1322. Indeed, Appellees' state law claim pursues specific retirement and pension rights the Plan could have, but does not, provide. Therefore, for these reasons, Appellees' claim cannot escape Section 514(a)'s preemptive reach.

Our analysis makes plain the flaws in the Superior Court panel majority's approach. First, the court did not move beyond the label Appellees affixed to the lawsuit they brought and scrutinize the record to determine precisely what Appellees claim they were promised and to determine precisely what they seek to recover. Second, the court used the analytic framework the Supreme Court rejected in *Travelers,* and did not consider, as the Supreme Court instructs, the aims of Section 514(a)'s preemptive reach and ERISA's requirements relative to the state law in question. Third, in relying on *Greenblatt,* a 1987 federal district court case, the Superior Court disregarded our cautionary note in *Pappas I* against founding a preemption analysis on cases that predate the shift in ERISA preemption jurisprudence the Supreme Court announced in 1995, in *Travelers. See Pappas I,* 555 Pa. at 351 &

n. 5, 724 A.2d at 893 & n. 5.[13] Fourth, the court's attempt to distinguish the Third Circuit's decision in *Hooven* by suggesting that Section 514(a) does not preempt a state cause of action if a plaintiff does not pursue or cannot secure relief for an alleged wrong under ERISA is, simply stated, incorrect.[14] There is nothing in the words of Section 514(a) which reflects a congressional intent to save state laws from preemption in such circumstances. Further, the Supreme Court has never hinted that the availability of a remedy or relief under ERISA is germane to a preemption analysis. In fact, in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), the Court reiterated that the policy decisions made by

**13.** In any event, *Greenblatt* is inapt. There, the plaintiff asserted a Pennsylvania misrepresentation claim, alleging he was misled by his employer into believing he would be provided with certain pension benefits sometime in the future. According to the district court, the essence of the plaintiff's lawsuit was fraud, not ERISA rights, and could have, just as easily, concerned "promises for a raise in salary, a promotion, or the use of tickets to a baseball game." *Greenblatt*, 666 F.Supp. at 742. Thus, in the court's view, pension benefits just happened to be the subject of the alleged fraud for which the plaintiff sought compensatory damages, and this was too tenuous a thread on which to hinge a determination of ERISA preemption. *Id.*

**14.** Nonetheless, we reject SKF's contention that *Hooven* is dispositive, but not for the reason offered by the Superior Court. In *Hooven*, the Third Circuit was not asked to determine the issue before us, *i.e.*, whether Section 514(a) of ERISA preempts a state law claim. Rather, the court was asked to consider whether the plaintiffs were permitted to pursue ERISA welfare benefits outlined in a summary plan description, but not repeated in their ERISA plan, under a federal common law contract-based theory. The Third Circuit decided that contract principles do not create "extra-ERISA causes of action" for plan benefits. *Hooven*, 465 F.3d at 573. Ultimately, the court evaluated the merits of the plaintiffs' claim as though it was brought under ERISA's civil enforcement provision at Section 502(a), and determined that no relief was due. *Id.* at 577–78. However, in arriving at its ruling, the court referred to several federal decisions that stand for the proposition that common law contract theories cannot be used to recover ERISA benefits not included in the written terms of ERISA plan documents, a point which is certainly consistent with the determination we have reached in the instant case under *Travelers* and its progeny. *Id.* at 573–74 (citing, *e.g.*, *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430–31 (2d Cir.1990) (observing that civil actions against employers for ERISA benefits predicated on common law contract principles have been deemed preempted and concluding that welfare benefit plan documents, not "prior practice," governed the plaintiffs' rights to severance pay)).

Congress in including certain remedies in the Act and excluding others must be respected. *Id.* at 208, 124 S.Ct. 2488 (quoting *Pilot Life Ins. Co.,* 481 U.S. at 54, 107 S.Ct. 1549 ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.")).[15]

Finally, the Second Circuit's decision in *Stevenson* does not, as Appellees contend, require a different result. There, the plaintiff, who left the employ of his bank-employer to work for an affiliate for a time, allegedly received a promise from the bank regarding the maintenance of pension benefits during his absence. Ultimately, the plaintiff filed a complaint against the bank and certain of its executives in state court, alleging that they unlawfully terminated his employment and reneged on that promise. Among the causes of action he brought were claims for breach of contract and unjust enrichment. When the defendants removed the case to federal court, the plaintiff filed an amended complaint, asserting ERISA claims and reasserting his state law causes of action, and also filed a motion for remand to state court. The district court dismissed the complaint and denied the motion to remand, holding, *inter alia,* that the plaintiff's breach of contract and unjust enrichment claims were preempted by ERISA.

On appeal, the Second Circuit disagreed. The court held: "[Section] 502(a) of ERISA does not preempt Stevenson's state law claims, which are in themselves neutral toward ERISA plans." 609 F.3d at 62.[16] In so doing, the court

15. We take no position on whether, in the circumstances presented, ERISA provides Appellees with a remedy or with relief.

16. The Second Circuit's focus was on complete preemption under Section 502(a) of the Act, *see supra* note 7, as the court addressed whether the plaintiff's original complaint asserted a question under federal law, thereby giving the district court jurisdiction, or whether his suit did not present ERISA claims and should be remanded to state court. At several points in its opinion, however, the court also discussed ordinary preemption under Section 514(a), but the court did not clearly distinguish between principles of ordinary and complete ERISA preemption in its analysis.

essentially determined that the complaint's allegations and the writings related thereto demonstrated that the promise the plaintiff sought to enforce was not for the receipt of ERISA pension benefits. Thus, the court held the record did not support ERISA preemption on the basis that: the defendants' asserted liability did not derive from the particular rights and obligations established by any benefit plan; the plaintiff's rights emanated from a separate promise that merely referenced benefit plans, none of which directly applied to him; the benefit plans simply provided a benchmark for assessing damages; the claims did not implicate a determination of ERISA benefits or undermine uniformity of plan administration; and the claims, if successful, would not have required a plan administrator to follow rules inconsistent with those provided by ERISA. *Id.* at 60–62. In the instant case, by contrast, we are concerned with preemption under Section 514(a). Moreover, as we have already noted: the alleged promise upon which Appellees' claim is founded was for ERISA retirement and pension rights; the Plan is the source of the those rights and is not a mere measure of compensatory damages; and granting relief on Appellees' claim would adversely affect the uniform administration of key ERISA concerns and would require a plan administrator to act contrary to ERISA standards. Thus, Appellees' reliance on *Stevenson* to argue against ERISA preemption under Section 514(a) as to their state law claim is misplaced.

For all of these reasons, we hold that Appellees' state law breach of contract claim is preempted by Section 514(a) of ERISA. Accordingly, we reverse the order of the Superior Court.

Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER, and ORIE MELVIN join the opinion.

Justice EAKIN files a dissenting opinion in which Justice McCAFFERY joins.

Justice EAKIN, dissenting.

I respectfully dissent from the majority opinion. I find Appellees' claim is so tenuously "related" to an ERISA pension plan that it is not preempted by ERISA.

Section 1144(a) of ERISA provides, in relevant part, "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). As the majority describes, the meaning of "relate to" and the corresponding breadth of ERISA preemption has changed over the years from an "almost breathtaking sweep" to a more restrained approach. Majority Op., at 473–478, 38 A.3d at 777–80. Initially, "relate to" was read "such that a state law '[relates] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). The United States Supreme Court later recognized the fallacy of such a broad reading, stating "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really, universally, relations stop nowhere.'" *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (citation omitted). Instead, the Court looked "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.,* at 656, 115 S.Ct. 1671. Those objectives include:

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; [...] to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

*Id.,* at 656–57, 115 S.Ct. 1671 (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

I cannot find any of these objectives to be implicated in the present case. To determine whether Appellees' claim "relates to" an ERISA pension plan, it is important to look at the harm complained of and the request for relief. Appellees' complaint is concise, and a quick examination reveals they are only requesting monetary damages for a breach of an oral agreement. Appellees allege they were promised equality with the union members' benefits in order to induce them to stay with the sinking ship until it submerged; those benefits were never given. This is simply a common breach of contract claim requiring Appellees to prove a contract existed, it was breached, and they suffered damages as a result of that breach. *See Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 603 Pa. 198, 983 A.2d 652, 665 (2009) (citing *Ferrer v. Trustees of the University of Pennsylvania,* 573 Pa. 310, 825 A.2d 591, 610 (2002)). They are suing their former employer for damages associated with it not keeping its promise; they are not suing the plan for refusing to admit them.

Regarding damages, I believe the majority mischaracterizes the relief sought. *See* Majority Op., at 481, 38 A.3d at 781 ("Appellees' state law claim pursues specific retirement and pension rights the Plan could have, but does not, provide.") Appellees are not seeking admission into the plan— the damages sought are strictly monetary. *See* Complaint, at 4 ("[Appellees] demand judgment in their favor and against [Appellant] for damages in excess of $75,000....").[1] Although calculating the damages might require referencing the pension plan, that is far too tenuous to support ERISA preemption.[2] Furthermore, the defendant, and potential

1. This is consistent with Appellees' brief, in which they state Appellant promised to pay them *"the value* of the same severance benefits offered to other employees if they remained employed with [the] company until the plant closed." Appellees' Brief, at 13 (emphasis added).

2. It is also possible Appellees could recover damages based solely upon Appellant inducing them to remain with the company for almost a year until it closed instead of seeking work elsewhere. Calculating such damages would not require referencing the plan at all.

source of recovery, is the company itself, not the pension plan.

Although the majority notes the Supreme Court's attempts to reign in ERISA preemption, I respectfully believe its holding is more akin to the prior line of cases where "relate to" was interpreted in its broadest sense. While the majority reviews the ERISA objectives, as directed by *Travelers*, I do not see how Appellees' claim offends any of them. If Appellees are successful in their action, it would be for basic breach of contract, not for an ERISA violation; therefore, it would not obstruct the creation of a uniform body of benefit law. Nor would it increase the administrative or financial burden on plans by creating conflicting directives or requiring different plans for different jurisdictions. A decision favorable to Appellees would not bind other pension plans, nor would it require them to adjust their behavior. Simply stated, no amendment to the plan would be required if Appellees win.

Because I find Appellees are merely seeking monetary damages, not direct plan benefits as determined by the majority, I would affirm the Superior Court's holding that Appellees' claim is not preempted by ERISA. Accordingly, I respectfully dissent.

Justice McCAFFERY joins this dissenting opinion.