J-A15036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE WESTON GROUP, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| HIGHMARK HEALTH SERVICES, | : | |
| FORMERLY HIGHMARK, INC., d/b/a | : | |
| HIGHMARK BLUE SHIELD AND MODEL | : | |
| CONSULTING, INC. | : | No. 1352 MDA 2016 |

Appeal from the Order entered May 4, 2016
in the Court of Common Pleas of Cumberland County,
Civil Division, No(s):  13-3622

BEFORE:  MOULTON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 27, 2017**

The Weston Group, Inc. ("Weston"), appeals from the Order denying its Motion for Summary Judgment.[1]  We affirm.

Beginning in August 2007, Highmark Health Services, formerly

_____

[1] It is well-settled that "an order denying summary judgment is ordinarily a non-appealable interlocutory order." ***McDonald v. Whitewater Challengers, Inc.***, 116 A.3d 99, 104 (Pa. Super. 2015).  However, Weston filed a timely Motion to Certify Interlocutory Order for Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1311(b), requesting that the trial court amend the May 4, 2016 Order to include language set forth at 42 Pa.C.S.A. § 702(b) (noting that a trial court may certify an interlocutory appeal if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter[.]").  On June 8, 2016, the trial court granted the Motion to Certify and amended the May 4, 2016 Order to include the relevant language from section 702(b).  Subsequently, this Court granted Weston's Petition for Permission to Appeal, ***see*** Pa.R.A.P. 1311(b), and accordingly, this appeal is properly before this panel.

Highmark, Inc., d/b/a Highmark Blue Shield (collectively "Highmark"), and Weston, with the aid of its agent, Model Consulting, Inc. ("Model"), entered into a series of yearly comprehensive healthcare and prescription drug coverage contracts ("contracts"). Under the terms of the contracts, Weston agreed to pay Highmark a monthly deposit rate for each employee enrolled in a health and prescription drug plan. The contracts also specified a monthly maximum rate for each employee.[2] Additionally, as part of the contracts, Highmark would calculate the total amount paid on claims made by Weston employees in combination with the specified retention rates (collectively "total income"). If the claims paid exceeded the monthly deposit rate, Weston was required to pay the difference between the monthly maximum rate and the monthly deposit rate at the end of each contract year.[3] If the total income exceeded the total amount paid under the maximum rate, the difference would be carried over to the following year, and be due upon termination of the contracts by either party. Conversely, if the deposit income exceeded the total income, Highmark would refund the excess amount to Weston.

---

[2] As an example, in the 2007-2008 contract, the monthly deposit rate for an individual was $300.13, and the monthly maximum rate was $353.09; for a family, the monthly deposit rate was $859.86, and the monthly maximum rate was $1,011.60. *See* Contract, 8/1/07, at 96.

[3] For the contract ending in 2008, Weston paid Highmark an annual settlement of $140,339.96. For the contract ending in 2009, Weston paid Highmark an annual settlement of $220,067.78. For the contract ending in 2010, Weston paid Highmark an annual settlement of $240,815.85.

On July 6, 2011, Weston informed Highmark that it was terminating the 2010-2011 contract, effective August 1, 2011. Thereafter, Highmark informed Weston that the accumulated deficit over the contract years was $730,466.78. Despite repeated demands by Highmark, Weston did not make any payment.

On June 21, 2013, Highmark instituted a Complaint against Weston, raising claims of breach of contract, unjust enrichment, and account stated. Weston filed an Answer with New Matter. Subsequently, Weston filed a Joinder Complaint against Model, which was joined as an additional defendant. Following discovery, Weston filed a Motion for Summary Judgment, arguing that the court of common pleas did not have subject matter jurisdiction over the matter because the Employee Retirement Income Security Act ("ERISA") governed the action. Highmark also filed a Motion for Summary Judgment. The trial court denied both Motions. Weston filed a timely Notice of Appeal.

On appeal, Weston raises the following questions for our review:

1. Whether [ERISA] preempts all of [Highmark's] state law causes of action[?]

2. Whether [ERISA] grants exclusive jurisdiction of this matter to the federal courts and[,] therefore[,] the Pennsylvania state courts lack subject matter jurisdiction over this matter[?]

Brief for Appellant at 4.

"[W]e review the trial court's denial of summary judgment for an abuse of discretion or error of law." *Bezjak v. Diamond*, 135 A.3d 623, 627 (Pa. Super. 2016) (citation omitted). "As with all questions of law, our review is plenary." *Nobles v. Staples, Inc.*, 150 A.3d 110, 120 (Pa. Super. 2016) (citation omitted).

"Federal preemption is a jurisdictional matter for a state court because it challenges subject matter jurisdiction and the competence of the state court to reach the merits of the claims raised." *NASDAQ OMX PHLX, Inc. v. Pennmont Secs.*, 52 A.3d 296, 315 (Pa. Super. 2012) (citation and brackets omitted).

> [I]n any preemption case, in determining whether a state law is preempted by federal law under the Supremacy Clause of the United States Constitution, we adhere, as we must, to the principles the United States Supreme Court has articulated. *See Dooner v. DiDonato*, 601 Pa. 209, 218, 971 A.2d 1187, 1193 (2009) (citing U.S. CONST. art. VI, cl. 2). The high Court has repeatedly stated that federal preemption of state law turns on the intention of Congress and begins with the presumption that Congress does not intend to supplant state law. *See, e.g., New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995). In addition, … the Supremacy Clause may entail preemption of state law either by express provision, by implication, or by a conflict between federal and state law, and has instructed that, in an express preemption case, the analysis begins "with the text of the provision in question and move[s] on, as need be, to the structure and purpose of the Act in which it occurs." *Id.* at 655, 115 S. Ct. 1671.

*Barnett v. SKF USA, Inc.*, 38 A.3d 770, 776-77 (Pa. 2012); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (noting that while a case may be removed to federal court where the claims in a plaintiff's

complaint arise under federal law, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction.").

As Weston's claims are related, we will address them together. Weston contends that ERISA preempts Highmark's causes of action. Brief for Appellant at 10. Weston argues that ERISA includes broad preemption provisions, which ensure federal regulation of employee benefit plans, including all forms of state action dealing with matters covered by ERISA. *Id.* at 10-11, 15. Weston asserts that the contracts are subject to the provisions of ERISA, as Highmark is seeking payments related to the administration and payment of claims for health services provided to Weston's employees. *Id.* at 11, 13, 14, 17; *see also id.* at 12, 14, 15 (wherein Weston argues that Highmark manipulated its underwriting recommendations when it lowered the monthly deposit rates to be paid by Weston employees to undercut a competitor, which had the result of increasing the deficit). Weston claims that ERISA is designed to protect the interests of employees in employee benefit plans, and that Highmark's actions directly affected Weston's employees. *Id.* at 15. Weston argues that under ERISA, federal district courts have exclusive jurisdiction over the matter. *Id.* at 16-17.

ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *see also Davila*, 542 U.S.

at 208 (noting that "Congress enacted ERISA to protect ... the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts.") (citation, brackets, and quotation marks omitted). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre[]emption provisions, … which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208 (citation and quotation marks omitted); *see also Travelers*, 514 U.S. at 654 (noting that the Supreme Court does not "assum[e] lightly that Congress has derogated state regulation, but instead ... addresse[s] claims of pre[]emption with the starting presumption that Congress does not intend to supplant state law[.]"). ERISA compels preemption under two different methods. *See* 29 U.S.C.A. §§ 1132, 1144.

The first form of preemption under ERISA allows for complete preemption under section 502(a). *See* 29 U.S.C.A. § 1132(a);[4] *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 24 (1983) (stating that "any state action coming within

---

[4] We note that "[w]hen ERISA was enacted in 1974, the Act was codified in Title 29 of the U.S. Code. However, the section numbers in the original Act were codified under different numbers in the Code. Many opinions subsequent to 1974 use the original numbering found in the Act." *Coggins v. Keystone Foods, LLC*, 111 F. Supp. 3d 630, 634 n.2 (E.D. Pa. 2015).

the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law."). Section 502(a) enumerates numerous situations in which an action may be brought under ERISA. *See* 29 U.S.C.A. § 1132(a). The most typical situation, set forth at section 502(a)(1)(B), permits claims by a participant or beneficiary to enforce present or future benefits due under the terms of the plan to be completely preempted and removed from state courts. *See id.* § 1132(a)(1)(B); *Davila*, 542 U.S. at 210 (noting that a state law claim is completely preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions[.]") (citation omitted).

The second form of ERISA preemption, commonly referred to as conflict or express preemption, provides, in relevant part, as follows: "[T]he provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C.A. § 1144(a).[5] While section 514(a) should

---

[5] An "employee benefit plan" is defined by ERISA as including an "employee welfare benefit plan" and an "employee pension benefit plan." 29 U.S.C.A. § 1002(3). An "employee welfare benefit plan" is any "plan, fund or program" which is "established or maintained" by an "employer" or an "employee organization" for the purpose of providing, *inter alia*, medical, hospital care, disability, or vacation benefits. *Id.* § 1002(1).

be read broadly, *see Barnett*, 38 A.3d at 777, the Supreme Court admonished that "relate to" is to be interpreted practically, by considering an action's connection or reference to the subject plan. *See Travelers*, 514 U.S. at 656.[6] Two categories of state law have been found to be preempted by ERISA: (1) "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ..., that 'reference' will result in pre[]emption;" and (2) "ERISA pre[]empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs ... a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (citations omitted).

Initially, Weston concedes that section 502(a) does not apply, *see* Brief for Appellant at 16, and grounds its preemption claims upon section

---

[6] "[I]n the vast majority of cases concerning ERISA preemption addressed by the Court [prior to *Travelers*], the [Supreme] Court concluded without hesitation that, under [s]ection 514(a), the state laws under review were preempted because they related to an ERISA plan." *Barnett*, 38 A.3d at 777. In *Travelers*, the Supreme Court recognized that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre[]emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" *Travelers*, 514 U.S. at 655 (citation omitted). Thus, "in order to give effect to both the starting presumption that Congress does not intend to supplant state law and the words of limitation Congress included in [s]ection 514(a), the *Travelers* Court announced [the above-mentioned] standard for analyzing ERISA preemption." *Barnett*, 38 A.3d at 778.

514(a). We agree. Consequently, we will address Weston's claims under the "relate to" standard as set forth in section 514(a) and *Travelers*.

In its Complaint, Highmark set forth three causes of action: breach of contract, unjust enrichment, and account stated, all premised upon Weston's failure to properly reimburse the debts owed under the contracts. Complaint, 6/21/13, at 3-13. The contracts, the purpose of which was to deliver health and prescription drug plans to Weston's employees, required Weston to pay Highmark any difference between the maximum rate and the deposit rate on a yearly basis, and the maximum rate and total income at the termination of the contracts.

Thus, while the payments due were for plans covered by ERISA, Highmark's causes of action do not "relate to" the subject plans. *See Cal. Div. Of Labor Standards Enf't v. Dillingham Const. N.A., Inc.*, 519 U.S. 316, 330 (1997) (stating that Congress did not intend ERISA to preempt areas of "traditional state regulation" that are "quite remote from the areas with which ERISA is expressly concerned-reporting, disclosure, fiduciary responsibility, and the like.") (citation omitted); *see also Pappas v. Asbel*, 768 A.2d 1089, 1092 (Pa. 2001) (stating that ERISA "preemption does not occur … if the state law has only a tenuous, remote, or peripheral connection with covered plans." (citation omitted)). In point of fact, adjudication of Highmark's claims does not require an interpretation of the ERISA plan, as the claims do not implicate the employee benefit structure or the

administration of benefits; bind employers or administrators to specific procedures; preclude uniform administration of benefit plans; or allow employees to utilize alternative mechanisms to obtain benefits. *See Gobeille*, 136 S. Ct. at 943; *Travelers*, 514 U.S. at 656. Moreover, Highmark paid the benefits due to Weston's employees under the ERISA plans, and Weston does not dispute the accuracy of the payments or the benefits received. Finally, preemption of Highmark's action does not advance any concerns of Congress in enacting ERISA. *See Davila*, 542 U.S. at 208. Accordingly, Highmark's action is not preempted by ERISA under section 514(a). *See, e.g., Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564–65 (9th Cir. 2008) (concluding that ERISA did not preempt an action under section 514(a) that was based on a contractual relationship between a hospital and a health benefits plan as the formation of the contract was completely independent of the terms of the ERISA plan); *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172–73 (9th Cir. 2004) (holding that a health plan's action seeking to recover benefits paid to insureds was not preempted by ERISA under section 514(a), as the health plan was merely attempting to enforce the reimbursement provision of the insurance contract); *Scripps Health v. Schaller Anderson, LLC*, 2012 WL 2390760, at **3–4 (S.D. Cal. 2012) (concluding that state law causes of action were not preempted by ERISA under section 514(a), because the action was based upon the failure

to properly pay claims under the agreements, and were only tangentially related to the administration of the benefit plan); *Immediate Pharm. Serv., Inc. v. Superior Metal Prod.*, 732 N.E.2d 417, 420–22 (Ohio App. 1999) (concluding that breach of contract claim between a pharmacy and a health plan was not preempted by ERISA under section 514(a), as the right to damages arises only from the contract, not from the ERISA plan).[7]

Additionally, Weston claims that under the plain terms of the contracts, Highmark must pursue any legal action under the administrative provisions of ERISA. Brief for Appellant at 11. However, Weston only cites to language in the contracts that directs members (Weston's employees) to seek legal action under ERISA. *Id.* (citing General Provisions of Contract at 71). This action does not involve members, but instead involves Weston, defined as the "the Group" in the contracts, and Highmark, defined as "the Plan" in the contracts. *See, e.g.,* Contract, 8/1/09, at 1; Contract, 8/1/08, at 1; Contract, 8/1/07, at 1. Weston does not cite to any place in the contracts that dictates legal actions involving "the Group" or "the Plan" must be pursued under the administrative provisions of ERISA. Thus, Weston's

---

[7] Weston's reliance upon the holdings in *First Nat. Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546 (11th Cir. 1992), and *Washington Nat. Ins. Co. v. Hendricks*, 855 F. Supp. 1542, 1545 (W.D. Wis. 1994), to support its proposition is unavailing. Indeed, our Supreme Court specifically admonished against relying upon "cases that predate the shift in ERISA preemption jurisprudence the Supreme Court announced in 1995, in *Travelers*." *Barnett*, 38 A.3d at 782; *see also Travelers*, 514 U.S. at 655.

claim is without merit.

Based upon the foregoing, the trial court properly denied Weston's Motion for Summary Judgment.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2017