# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: The Ellwood City Community : 
Health Foundation, a Pennsylvania : 
Nonprofit Corporation : 
                                 :   No. 1001 C.D. 2019
                                 :   Argued: May 15, 2020
Appeal of: The Ellwood City : 
Community Health Foundation : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE BROBSON     FILED: July 21, 2020

The Ellwood City Community Health Foundation (Foundation) appeals from an order of the Court of Common Pleas of Lawrence County, Orphans' Court Division (Orphans' Court), dated June 24, 2019. The Orphans' Court denied the Foundation's Petition for Approval of the Separation of the Foundation and ECH Legacy, Inc. (ECH Legacy) and the Foundation's Amended and Restated Articles of Incorporation and Bylaws (Petition). For the reasons set forth below, we reverse the Orphans' Court order.

## I. BACKGROUND

ECH Legacy, which was formerly known as Ellwood City Hospital, is a Pennsylvania nonprofit corporation that operated a general acute care community hospital (Hospital) in Ellwood City, Pennsylvania. (Reproduced Record (R.R.) at 6a.) The Foundation, which was formerly known as Ellwood City Hospital Foundation, is a Pennsylvania nonprofit corporation that, pursuant to its current

articles of incorporation, operates exclusively for the benefit and support of ECH Legacy. (*Id.* at 9a-10a, 335a-43a.) In November 2012, ECH Legacy, with the approval of the Orphans' Court, transferred its endowment funds (Endowment Funds), estimated at that time to be approximately $25,000,000, to the Foundation. (*Id.* at 10a-11a.) Since that time, the Foundation has served as a public charity supporting organization for ECH Legacy. (*Id.* at 11a, 124a.) In that role, the Foundation has been responsible for holding and managing the Endowment Funds and has used the Endowment Funds exclusively to support ECH Legacy's operation of the Hospital. (*Id.* at 7a, 11a.)

On September 22, 2017, the Orphans' Court approved an asset purchase agreement (Asset Purchase Agreement) between ECH Legacy and Americore Health, LLC and Ellwood Medical Center, LLC (collectively, Americore) for the sale and transfer of substantially all of ECH Legacy's assets to Americore, a for-profit company. (*Id.* at 11a.) Pursuant to the terms and conditions of the Asset Purchase Agreement, Americore and ECH Legacy agreed that Americore would assume sponsorship of and liability for the Retirement Plan for Employees of Ellwood City Hospital (Pension Plan). (*Id.* at 242a-43a.) Thereafter, on October 31, 2017, ECH Legacy transferred its assets to Americore, and Americore took control of the Hospital's operations. (*Id.* at 11a, 88a.) On that same date, ECH Legacy and the Foundation entered into a separation agreement (Separation Agreement), pursuant to which: (1) the Foundation agreed to provide ECH Legacy with final funding in the amount of $11,000,000 for the payment of ECH Legacy's known debts, liabilities, and expenses and $2,000,000 for the creation of a reserve to satisfy any of ECH Legacy's unknown liabilities; (2) ECH Legacy agreed to release and discharge the Foundation from its responsibility to support ECH Legacy

2

and its liability for any of ECH Legacy's obligations or liabilities; and (3) upon the Orphans' Court's approval of the separation of ECH Legacy and the Foundation, the Foundation's affiliation with ECH Legacy would terminate and the Foundation would amend its articles of incorporation and bylaws to reflect the separation of ECH Legacy and the Foundation, to expand the Foundation's charitable purposes beyond the exclusive support of ECH Legacy, and to change the Foundation's tax-exempt status from a public charity to a private foundation. (*Id.* at 11a-12a, 88a-92a, 330a-31a.)

On March 12, 2019, the Foundation filed its Petition with the Orphans' Court, seeking, *inter alia*, approval of the separation of ECH Legacy and the Foundation and approval of the Foundation's proposed amended and restated articles of incorporation and proposed amended and restated bylaws. In its Petition, the Foundation indicated that, under its new objectives, which included "to improve, foster, promote, and enhance the quality of life and health for the general public of Ellwood City, Pennsylvania, the Counties of Lawrence and Beaver, Pennsylvania, and the surrounding geographical areas," the Foundation intended to support, *inter alia*, the Meals on Wheels program operating in Ellwood City. (*Id.* at 13a-14a.) The Foundation also indicated that the Endowment Funds, which include both restricted and unrestricted assets, had a total market value of $8,989,392. (*Id.* at 15a-17a, 75a, 99a-100a.) The Pennsylvania Office of the Attorney General (OAG), on behalf of the Commonwealth of Pennsylvania (Commonwealth), filed a response to the Foundation's Petition, representing that the Commonwealth had no objection to the proposed separation of ECH Legacy and the Foundation but requesting that the Orphans' Court enter an order requiring the Foundation to provide a complete

accounting of the Endowment Funds from November 26, 2012, to the present. (*Id.* at 76a-81a.)

The Orphans' Court held an evidentiary hearing on the Foundation's Petition on June 12, 2019. At that time, the Foundation presented the testimony of E. Williams Matthews (Matthews), the chief financial officer for ECH Legacy and the executive director for the Foundation. (*Id.* at 86a-87a.) As the executive director for the Foundation, Matthews is responsible for overseeing the Foundation's day-to-day functions and financial activities. (*Id.* at 87a.) Matthews testified that the Foundation is seeking to amend its articles of incorporation and bylaws at this time because the Foundation

> no longer . . . support[s] a community individual nonprofit entity . . . . So the funds that [the Foundation] had in support of [ECH Legacy] can no longer be used to support the [Hospital] because [it is now owned by] a for-profit entity. So those funds have to be used [for] a nonprofit purpose. So in doing that, the articles of incorporation and the bylaws need to be changed to reflect that new direction of those funds.

(*Id.* at 95a-96a.) Matthews testified further that, following the transfer of ECH Legacy's assets and the Hospital's operations to Americore, the Foundation has become a private foundation because it no longer qualifies as a public charity supporting organization. (*Id.* at 123a-24a.) Matthews also explained that, under its new proposed purpose, the Foundation intends to fund programs that support public health, including "pregnancy programs, prevention, drug and alcohol programs, [and] environmental programs that would promote better health[y] living," as well as programs for senior transportation, family and child abuse, and medical education for individuals who contemplate going into the medical field and remaining within the Ellwood City community. (*Id.* at 98a-99a.)

4

Matthews testified further that, following the closing on the Asset Purchase Agreement and the transfer of ECH Legacy's assets to Americore, the Foundation transferred $13,000,000 to ECH Legacy in accordance with the Separation Agreement—$11,000,000 to satisfy ECH Legacy's outstanding debts and liabilities and $2,000,000 for any unknown liabilities. (*Id.* at 90a-91a.) He indicated that the total funds remaining and available to ECH Legacy from such transfer at the time of the June 12, 2019 hearing was $2,420,584, and that ECH Legacy has certain investments totaling approximately $1.9 million, which ECH Legacy will receive in 2022. (*Id.* at 104a-05a.) Matthews also explained, however, that ECH Legacy has total estimated liabilities of $1,269,239. (*Id.* at 105a, 109a.) He indicated that ECH Legacy is a defendant in 5 medical malpractice cases that have not yet been settled or otherwise resolved. (*Id.* at 106a.) In connection with those cases, ECH Legacy could be responsible for an additional $9,720 in legal expenses (ECH Legacy has a $10,000 deductible for legal expenses per case), but that any further liability should be covered by a $20,000,000 tail coverage insurance policy that ECH Legacy purchased at the time that it sold its assets to Americore. (*Id.* at 106a-07a.) In addition to the medical malpractice cases, ECH Legacy also has potential liability for: (1) 3 workers' compensation claims in the amount of $483,830 (ECH Legacy was self-insured up to $500,000 per claim); (2) unemployment compensation claims to individuals who were displaced in connection with the sale of its assets to Americore in the approximate amount of $13,000 (ECH Legacy was self-insured); and (3) a payback to the Centers for Medicare and Medicaid Services in the amount of $762,960. (*Id.* at 107a-09a.)

Matthews also testified that, on January 16, 2018, ECH Legacy made its final annual contribution to the Pension Plan in the amount of $510,000 for plan year

5

May 1, 2016, to April 30, 2017, as set forth on the 2016 Form 5500 Annual Return/Report of Employee Benefit Plan (Form 5500). (*Id.* at 116a-17a, 487a-92a.) He further explained that, even though ECH Legacy had already transferred its assets to Americore and Americore had assumed responsibility for the Pension Plan and had become the Pension Plan's sponsor prior to that date, ECH Legacy made the annual contribution on January 16, 2018, because ECH Legacy was the Pension Plan's sponsor for plan year May 1, 2016, to April 30, 2017. (*Id.* at 118a.) He also explained that Americore, as the Pension Plan's sponsor for plan year May 1, 2017, to April 30, 2018, filed the 2017 Form 5500 electronically in February 2019, but that Americore did not make the required annual contribution to the Pension Plan in the amount of $500,320. (*Id.* at 115a-16a, 118a-21a, 134a-35a, 480a-85a.) Matthews indicated that he did not know why Americore had not made the annual contribution for plan year May 1, 2017, to April 30, 2018, or if Americore would make that annual contribution or any future annual contributions to the Pension Plan. (*Id.* at 135a.)

When the Orphans' Court questioned whether the Foundation had sufficient assets to pay ECH Legacy's unfunded portion of the Pension Plan—*i.e.*, $7,984,499 as of June 30, 2017, which date is a few months before ECH Legacy transferred its assets to Americore—Matthews stated "the [F]oundation has [$9,000,000]." (*Id.* at 135a-36a, 515a.) Matthews nevertheless explained that, based on his discussions with the actuary for the Pension Plan around the time that ECH Legacy's assets were transferred to Americore, he did not believe that ECH Legacy would have any responsibility to fund the Pension Plan because that responsibility would fall onto Americore as the Pension Plan's sponsor and, in the event that Americore failed to fully fund the Pension Plan, the Pension Benefit Guaranty Corporation

(PBGC)[1] would guarantee the individual participants' benefits. (*Id.* at 136a-37a.) Despite this position, Matthews indicated that he did not have any documentation from the PBGC absolving ECH Legacy from liability for the Pension Plan or any guarantee from Americore that it had set aside sufficient funds to fulfill its obligation to satisfy ECH Legacy's unfunded portion of the Pension Plan. (*Id.* at 137a-38a.) Matthews also indicated that ECH Legacy had not pursued and did not intend to pursue any action against Americore to require Americore to make the $500,320 annual contribution to the Pension Plan for plan year May 1, 2017, to April 30, 2018. (*Id.* at 140a-41a.)

By opinion and order dated June 24, 2019, the Orphans' Court denied the Foundation's Petition. In so doing, the Orphans' Court reasoned:

> The Foundation was formed for the purpose of supporting [ECH Legacy], a community hospital and a non[]profit corporation. Many people donated money to [ECH Legacy] and to the Foundation so that the people of Ellwood City would continue to have an acute care community hospital which could serve their medical needs. [ECH Legacy] had an endowment fund of approximately $25 million . . . in 2012, which was transferred to the Foundation to be used exclusively for the support of [ECH Legacy]. Due to financial downturns and problems experienced by many local community hospitals, [ECH Legacy] continued to lose money at an alarming rate. The losses were such that [ECH Legacy] and the Foundation would soon have spent all of the endowment monies and [ECH Legacy] would have to close [the Hospital]. It is for this reason that [ECH Legacy's b]oard transferred the physical assets of [ECH Legacy] to Americore . . . [a] for profit

---

[1] PBGC, a division of the United States Department of Labor, was created by Section 4002 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1302, to, *inter alia*, guarantee the payment of nonforfeitable benefits—*i.e.*, vested benefits—of single-employer retirement plans, like the Pension Plan. *See* 29 U.S.C. §§ 1302, 1322.

corporation[].  It was [ECH Legacy's b]oard's hope that the for profit entit[y] could keep [the H]ospital functioning to provide services for the people of Ellwood City.

However, the transfer of assets does not relieve [ECH Legacy] or the Foundation . . . from paying the obligations that were incurred before the assets were transferred/sold to Americore . . . .  ECH [Legacy] and the Foundation recognized their obligation to pay [ECH Legacy's] bills, all except for the obligation to [the] Pension Fund.  The Foundation's stated mission is to support [ECH Legacy] and provide the funds to pay its bills.  During the operation of the Hospital, (prior to the asset transfer to Americore), [ECH Legacy] employed a large number of people.  [ECH Legacy] agreed to pay not only the employee's [sic] wages, but also to fund [the] Pension Plan.  Until [ECH Legacy's] debt and obligation to their [sic] employees has been satisfied, the Foundation has not completed its mission.

This [Orphans'] Court cannot approve and does not approve of the proposed change in the purposes of the Foundation that would divert available funds to other charitable purposes, while leaving the . . . Pension [Plan] severely underfunded.  The Foundation has the ability to make . . . the Pension [Plan] whole.  Until the Foundation satisfies all the obligations and debts of [ECH Legacy], its funds cannot be diverted to other purposes.  The Foundation's Tenth Article of Incorporation states in clear and unambiguous words, "the [Foundation] shall not engage in activities which are not in furtherance of the above stated purposes or operate to support or benefit any organization other than the above referred publicly supported organization["] ([ECH Legacy]).  Until those obligations are fulfilled, this [Orphans'] Court will not approve a change in the Foundation's charitable purposes.

(Orphans' Ct. Op., June 24, 2019, at 7-8.)

The Foundation appealed the Orphans' Court's opinion and order to this Court, and the Orphans' Court directed the Foundation to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate

8

Procedure (Rule) 1925(b). In its Rule 1925(a) opinion, the Orphans' Court further reasoned:

> The Foundation misunderstands the purpose of . . . [the] PBGC and [ECH Legacy's] obligation to its former employees.
>
> . . . .
>
> The liability to fully fund an underfunded [pension] plan is placed on the "employer" under [ERISA].[2] [ERISA] makes it clear that when an employer ceases operations, as [ECH Legacy] did [as of October 31, 2017], it must make arrangements with [the] PBGC to make payments to fully fund the pension liability. The employer[] in this case, [ECH Legacy,] would need to receive a waiver signed by the Secretary of the Treasury to avoid further liability. At the hearing, the Foundation did not provide the [Orphans'] Court with a waiver signed by the Secretary of the Treasury, or any written acknowledgment from [the] PBGC that [ECH Legacy] was released from liability for the [P]ension [Plan]. Nor did the Foundation provide the [Orphans'] Court with a legal opinion letter signed by an attorney that certifies that [ECH Legacy] can divert its existing funds, which are sufficient to pay the underfunded pension liability, and be legally relieved of liability to either the Pension [Plan's f]und or to [the] PBGC.
>
> . . . .
>
> [ECH Legacy] operated and employed personnel for over 100 years until October 31, 2017. As part of their promised and earned compensation, the several hundred employees who are covered by the . . . Pension Plan were promised certain defined benefits by [ECH Legacy]. That [Pension P]lan is underfunded by $7,984,499.00. The Foundation has one corporate purpose[,] which is to fund the operations of [ECH Legacy]. After paying all of [ECH Legacy's] bills, except [ECH Legacy's] obligation to the . . . Pension Plan, the Foundation has more than

---

[2] 29 U.S.C. §§ 1001-1461.

9

enough money to fully fund the . . . Pension Plan. It just refuses to do so and now asks the [Orphans'] Court to approve a change to its [a]rticles of [i]ncorporation and [b]ylaws so that it can separate from its obligation to [ECH Legacy] and to [ECH Legacy's] former employees and spend the money on other generalized charitable purposes. The Foundation received its funding from [ECH Legacy's E]ndowment [F]und[s] to pay [ECH Legacy's] bills and obligations. One very vital obligation remains. [ECH Legacy] and the Foundation have a legal obligation to the former employees of [ECH Legacy] to use it's [sic] money to fully fund the . . . Pension [Plan f]und, before it can be said to have completed its corporate purpose. It is for this reason that the request of the [Foundation] to separate from [ECH Legacy] and to amend its [a]rticles of [i]ncorporation and [b]ylaws to allow it to use its funds for other generalized charitable purposes is denied.

. . . The Foundation has asked this [Orphans'] Court to approve the diversion of its nonprofit corporate funds, at a time when the annual contribution obligation of Americore . . . is in default, there is no reasonable expectation of any future contributions, and neither [ECH Legacy] [n]or the Foundation have any intention of suing Americore . . . to compel the payment of the obligated contributions. In consideration of the foregoing facts, such a request by the Foundation places [ECH Legacy's] former employees' pensions at risk and into a distressed status and forces the burden of the Foundation and [ECH Legacy] to fund the [P]ension [P]lan onto . . . [the] PBGC, an independent federal agency. This [Orphans'] Court will not authorize or condone the Foundation's request.

In the Foundation's [s]tatement of [e]rrors [c]omplained of on [a]ppeal, the Foundation makes note that the [Orphans'] Court approved the Asset Purchase Agreement between [ECH Legacy] and Americore . . . . At the time of the [Orphans'] Court approval for the transfer, the testimony established that the Foundation had sufficient monies on hand to pay all [ECH Legacy] debts including the $7,984,499.00 needed to fully fund the [P]ension [P]lan. The Foundation and [ECH Legacy]

have made it clear that they will not seek to compel [Americore] to comply with the Asset Purchase Agreement and fully fund the [P]ension [P]lan. Now the Foundation is asking this [Orphans'] Court for approval to divert its remaining funds to other non-hospital related purposes and be relieved of its obligation to fund the [Pension Plan]. That request is refused.

(Orphans' Ct. Op., Sept. 16, 2019, at 3-7 (citation omitted).)

## II. ARGUMENTS ON APPEAL

On appeal to this Court,[3] the Foundation argues that the Orphans' Court committed an error of law by denying its Petition because ECH Legacy satisfied all of its funding obligations and neither ECH Legacy nor the Foundation retained any liability for the Pension Plan. The Foundation further argues that, even assuming *arguendo*, that ECH Legacy could have some future contingent liability for the Pension Plan, such liability is not chargeable to the Foundation.[4]

## III. DISCUSSION

As to its first issue, the Foundation argues that the Orphans' Court committed an error of law by denying its Petition because ECH Legacy satisfied all of its funding obligations to the Pension Plan prior to closing on the Asset Purchase Agreement and neither ECH Legacy nor the Foundation retained any liability for the Pension Plan after ECH Legacy's assets were transferred to Americore. More specifically, the Foundation contends that the Orphans' Court's decision to deny its Petition was based on a mistaken determination that ECH Legacy, and by extension the Foundation, retained some obligation to fund the Pension Plan following the sale

---

[3] "On appeal from an order of the orphans' court, this Court's scope of review is limited to determining whether the record is free from legal error and whether the court's factual findings are supported by the evidence." *In re Estate of Berry*, 921 A.2d 1261, 1263 n.1 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 1279 (Pa. 2007).

[4] OAG notified this Court that it did not intend to participate in this appeal, and, thus, OAG did not file a brief.

11

of ECH Legacy's assets to Americore, a separate for-profit corporation. The Foundation contends that, contrary to the Orphans' Court's determination, ECH Legacy and the Foundation have not retained any liability for the Pension Plan because: (1) for the plan years during which it served as the Pension Plan's sponsor, ECH Legacy made all of its annual contributions to the Pension Plan in a timely manner; (2) ECH Legacy transferred liability for the Pension Plan, including the responsibility to fund the Pension Plan, to Americore as part of the Asset Purchase Agreement, an agreement that had been reviewed and approved by the Orphans' Court before it was finalized; (3) the Pension Plan was not terminated on or before the date that ECH Legacy transferred its assets to Americore (the Hospital's operations did not cease on or before that date), and Americore, as the Pension Plan's sponsor, will be responsible for any termination funding if the Pension Plan is terminated in the future; and (4) it is extremely unlikely that the PBGC will hold ECH Legacy liable as a predecessor sponsor of the Pension Plan, as there is no evidence of record to suggest that ECH Legacy transferred its assets to Americore for the purpose of evading its liability to the Pension Plan.[5]

"ERISA 'is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.'" *Barnett v. SKF USA, Inc.*, 38 A.3d 770, 776 (Pa.) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90

_____

[5] The Foundation further contends that, even if Americore fails to satisfy its funding obligations to the Pension Plan, ECH Legacy would have no direct liability to the Pension Plan's participants because the PBGC guarantees all of the participants' vested benefits in the Pension Plan. This argument appears to relate not to the question of whether ECH Legacy and/or the Foundation retained any obligation to fund the Pension Plan following the sale of ECH Legacy's assets to Americore, but rather the question of to whom ECH Legacy could be liable for its failure to fulfill any potential funding obligations to the Pension Plan. For these reasons, we do not see how this argument is relevant to our review of the Orphans' Court's decision on appeal, and, therefore, we do not address it in any further detail in this opinion.

12

(1983)), *cert. denied*, 568 U.S. 942 (2012). "It has long been recognized that one of [the United States'] Congress' principal goals in enacting [ERISA] was to ensure that, upon retirement, employees receive the pension benefits to which they are entitled." *Id.* (citing *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984) (*R.A. Gray*)). "It was also Congress' aim to ensure the proper administration of pension plans, both during the years of an employee's active service and in his or her retirement years." *Id.* (citing *Boggs v. Boggs*, 520 U.S. 833, 839 (1997)).

In order to achieve Congress' goal to protect employees' pension benefits, ERISA, as well as the Internal Revenue Code (Code),[6] mandate that single-employer defined benefit pension plans, such as the Pension Plan, meet statutory minimum funding standards. 29 U.S.C. § 1082(a); 26 U.S.C. § 412(a). In the event that a pension plan does not satisfy the minimum funding standard for any given plan year, ERISA and the Code require that the employer/sponsor of the pension plan make an additional contribution to the pension plan within 8½ months of the end of the plan year—*i.e.*, a minimum required contribution that is calculated based upon the difference between the pension plan's assets and an actuarially determined funding target for the applicable plan year. 29 U.S.C. §§ 1082(a)-(b), 1083(a), (j)(1); 26 U.S.C. §§ 412(a)-(b), 430(a), (j)(1).

Another way in which ERISA seeks to achieve Congress' goal to protect employees' pension benefits is through the creation of "a plan termination insurance program, administered by the [PBGC]." *R.A. Gray*, 467 U.S. at 720. In effect, ERISA "provide[s] each employee with an insurance policy against his employer's breach of contract on pension matters." *In re Consol. Litig. Concerning Int'l*

---

[6] 26 U.S.C. §§ 1-9834.

*Harvester's Disposition of Wis. Steel*, 681 F. Supp. 512, 516 (N.D. Ill. 1988) (*International Harvester*). "The PBGC is the insurer, paying from a fund created from premiums paid by every American employer with a pension plan." *Id.* In order to prevent abuse of this insurance program, ERISA imposes liability on employers. *Id.* For single-employer plans, "liability is incurred at [the time of] termination of the [pension] plan and it runs directly to the PBGC." *Id.*; *see also* 29 U.S.C. § 1362. Typically, a pension plan's termination occurs through distress or involuntary action by the PBGC, but a termination can also occur if there is a "substantial cessation of operations"—*i.e.*, "a permanent cessation of operations at a facility which results in a workforce reduction of a number of eligible employees at the facility equivalent to more than 15 percent of the number of all eligible employees of the employer." 29 U.S.C. § 1362(a), (e). "If the employer has failed to fund any ERISA-insured pension obligations[,] the PBGC has in effect an insurer's claim for subrogation." *Int'l Harvester*, 681 F. Supp. at 516. In other words, "[i]f the employee cannot collect from his employer on a pension insured under ERISA, then the PBGC pays the guaranteed amount[, b]ut the PBGC is in effect subrogated to the employee's claim against the employer and may pursue the non-paying employer." *Id.* In addition to current employers/sponsors, ERISA also imposes termination liability on predecessor plan sponsors if the principal purpose of the sale transaction was to evade liability to the pension plan and the sale transaction occurred within 5 years of the date of the pension plan's termination. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (*White Consol. Indus. I*), *cert. denied*, 510 U.S. 1042 (1994); *see also* 29 U.S.C. § 1369(a).[7]

---

[7] Essentially, 29 U.S.C. § 1369 is a "codification of the implicit predecessor liability theory of [29 U.S.C. § 1362], which was enunciated for the first and only time in [*International*
**(Footnote continued on next page…)**

14

In this case, it is undisputed that ECH Legacy satisfied all of its funding obligations to the Pension Plan with respect to the minimum required contributions. The record reflects that, on January 16, 2018, ECH Legacy made its final annual contribution to the Pension Plan in the amount of $510,000 for plan year May 1, 2016, to April 30, 2017, and there is no evidence of record to suggest that ECH Legacy failed to make any of the minimum required contributions to the Pension Plan prior to that time. (R.R. at 116a-17a, 487a-92a.) In addition, Americore, which, pursuant to the Asset Purchase Agreement, became the Pension Plan's sponsor and assumed liability for any funding obligations to the Pension Plan as of October 31, 2017, was responsible for any minimum required contributions to the Pension Plan for plan years beginning May 1, 2017, and thereafter. (*See* R.R. at 242a-43a, 480a-85a.) ECH Legacy's responsibility to make annual minimum required contributions to the Pension Plan ended when ECH Legacy was no longer the Pension Plan's sponsor. *See* 29 U.S.C. § 1082. For these reasons, there is no basis upon which ECH Legacy could be held responsible directly to the Pension Plan for the payment of any minimum required contributions.

In addition, it seems unlikely that the PBGC would be successful in imposing termination liability onto ECH Legacy either as the sponsor of the Pension Plan or

---

*Harvester*]." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 215 F.3d 407, 413 (3d Cir. 2000) (*White Consol. Indus. II*). In *International Harvester*, the United States District Court for the Northern District of Illinois held:

> [P]redecessor liability under the former [Section] 1362 requires proof of [2] elements, [1] subjective and [1] objective. An employer who, with a sale of his business, delegates his pension obligations is liable if a principal purpose of the sale is to evade pension liability and if, objectively, his buyer lacks a reasonable chance of meeting those obligations.

*Int'l Harvester*, 681 F. Supp. at 526.

as a predecessor sponsor of the Pension Plan. As set forth above, except in very limited circumstances, ERISA imposes termination liability on the pension plan's sponsor as of the date of the pension plan's termination. *See* 29 U.S.C. § 1362. Thus, in the event that the Pension Plan is terminated at some date in the future, Americore, not ECH Legacy, could be held secondarily liable to the PBGC for any underfunding of the Pension Plan. The Orphans' Court, nevertheless, seems to suggest that ECH Legacy could be held liable to the PBGC as the Pension Plan's sponsor under Section 1362(e), because ECH Legacy experienced a "substantial cessation of operations" as of October 31, 2017, the date on which it transferred its assets to Americore. We disagree. There is simply no evidence in the record to suggest that the Hospital's operations ceased or that there was a workforce reduction at the time that ECH Legacy transferred its assets to Americore. *See* 29 U.S.C. § 1362(e). Quite to the contrary, the record reflects that Americore both took over and continued the Hospital's operations following the asset transfer. In addition, there would be no basis upon which the PBGC could hold ECH Legacy liable as a predecessor sponsor of the Pension Plan if the Pension Plan is terminated within 5 years of October 31, 2017, because there is no evidence of record to suggest that ECH Legacy transferred its assets to Americore with a principal purpose of evading liability to the Pension Plan. *See* 29 U.S.C. § 1369(a).

Moreover, while we commend the Orphans' Court for attempting to protect the Hospital's employees and their pension benefits, we believe that the time to question ECH Legacy's liability for the underfunding of the Pension Plan was at the time that the Orphans' Court reviewed the Asset Purchase Agreement—*i.e.*, at a time when ECH Legacy was the Pension Plan's sponsor and was responsible for the Pension Plan and its funding. We recognize that the Orphans' Court's approval of

16

the Asset Purchase Agreement came at a time when the parties and the Orphans' Court were trying to save the Hospital and the many jobs that would have been lost if ECH Legacy was forced to close the Hospital's doors, but, given the law and circumstances outlined above, we simply cannot uphold the Orphans' Court's decision. For all of these reasons, we must conclude that the Orphans' Court committed an error of law by denying the Foundation's Petition because ECH Legacy satisfied all of its funding obligations to the Pension Plan prior to closing on the Asset Purchase Agreement and ECH Legacy did not retain any liability for the Pension Plan after its assets were transferred to Americore.[8]

## IV. CONCLUSION

Accordingly, we reverse the Orphans' Court's order.

_____
P. KEVIN BROBSON, Judge

---

[8] Given our disposition above, we do not consider the Foundation's remaining issue on appeal—*i.e.*, whether the Orphans' Court committed an error of law by denying the Foundation's Petition because ECH Legacy's potential future liability for any underfunding of the Pension Plan is not chargeable to the Foundation.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: The Ellwood City Community : 
Health Foundation, a Pennsylvania : 
Nonprofit Corporation : 
                            :    No. 1001 C.D. 2019
                            : 
Appeal of: The Ellwood City : 
Community Health Foundation : 

# **O R D E R**

AND NOW, this 21st day of July, 2020, the order of the Court of Common Pleas of Lawrence County, Orphans' Court Division, is hereby REVERSED.

---------------------------------------------

P. KEVIN BROBSON, Judge